NO. 13-5492

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ROGER SMITH

*Plaintiff-Appellant*

v.

AEGON COMPANIES PENSION PLAN

*Defendant-Appellee*

**On Appeal from the United States District Court for
the Western District of Kentucky, Louisville Division**
*Case No. 3:13-cv-697*
*Hon. Judge John G. Heyburn II*

## BRIEF OF PLAINTIFF-APPELLANT

Michael D. Grabhorn
*mdg@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Pkwy, Ste. 107
Louisville, KY  40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff-Appellant*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Plaintiff-Appellant makes the following disclosures:

1.　　Are any of said parties subsidiaries or affiliates of a publicly owned corporation?

　　　　No.

2.　　Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

　　　　No.


Dated:  July 22, 2013　　　　　 s/ Michael D. Grabhorn
　　　　　　　　　　　　　　　 Michael D. Grabhorn

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL
INTEREST ......................................................................................... ii

TABLE OF CONTENTS ....................................................................... iii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................... 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ..... 2

STATEMENT OF ISSUES FOR REVIEW ............................................. 3

STATEMENT OF THE CASE ............................................................... 4

STATEMENT OF FACTS .................................................................... 6

    A.  Mr. Smith's employment and VEERP benefits. ........................ 6

    B.  Mr. Smith's files suit to enforce the VEERP. .......................... 9

    C.  Mr. Smith commences this action. ........................................ 9

    D.  Aegon files a motion to dismiss. .......................................... 9

    E.  Mr. Smith seeks relief under Rule 59. ................................. 10

SUMMARY OF ARGUMENT ............................................................. 14

I.    THE 2007 VENUE AMENDMENT IS UNENFORCEABLE. ............ 14

II.   THE 2007 VENUE AMENDMENT DOES NOT APPLY TO ERISA
    502(a)(3) CLAIMS. ..................................................................... 17

ARGUMENT ..................................................................................... 18

I.    THE APPELLATE STANDARD OF REVIEW IS DE NOVO. ......... 19

II.   THE DISTRICT COURT ERRED AS A MATTER OF LAW IN
    DISMISSING MR. SMITH'S *(a)(1)(B)* CLAIMS. ....................... 19

A.  The Department of Labor's opinion is entitled to deference. ......................19

B.  The venue amendment was not the result of an arms-length transaction. ..23

C.  The 2000 plan document controls. ................................................................25

D.  ERISA's strong public policy disfavors forum selection clauses ...............27

III.  THE DISTRICT COURT ERRED AS A MATTER OF LAW IN
DISMISSING MR. SMITH'S *(a)(3)* CLAIMS. .............................................30

CONCLUSION .....................................................................................................32

CERTIFICATE OF COMPLIANCE ................................................................... A-1

CERTIFICATE OF SERVICE ........................................................................... A-2

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ........... A-3

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Bosch Automotive Systems, Inc.*,
    232 Fed.Appx. 491 (6th Cir.2007) ......................................................17, 30

*Barnhart v. Walton*,
    535 U.S. 212 (2002).............................................................................14, 20

*Bartling v. Fruehauf Corp.*,
    29 F.3d 1062 (6th Cir.1994) ...............................................................14, 21

*Battle Creek Health System v. Leavitt*,
    498 F.3d 401(6th Cir.2007) .................................................................14, 21

*Boyd v. Grand Trunk Western R. Co.*,
    338 U.S. 263 (1949)..............................................................................16, 27

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
    467 U.S. 837 (1984)......................................................................14, 19, 20

*Coleman v. Supervalu, Inc. Short Term Disability Program*,
    --- F.Supp.2d ---, 2013 WL 365263 (N.D.Ill., Jan. 31, 2013)...............*passim*

*Doe v. Blue Cross and Blue Shield United of Wis.*,
    112 F.3d 869 (7th Cir.1997) .................................................................15, 24

*Fallin v. Commonwealth Ind. Inc. Cash Balance Plan*,
    521 F.Supp.2d 592 (W.D.Ky.2007) ......................................................16, 25

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)...................................................................................26

*First of Michigan Corp. v. Bramlet*,
    141 F.3d 260 (6th Cir.1998) ......................................................................19

*Glenn v. MetLife*,
    461 F.3d 660 (6th Cir.2006) ......................................................................26

*Grosz-Salomon v. Paul Revere Life Ins. Co.*,
    237 F.3d 1154 (9th Cir.2001) .....................................................................26

*M/S Bremen v. Zapata Off Shore Co.*,
    407 U.S. 1 (1972)........................................................................................29

*Massachusetts Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)......................................................................15, 23

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*,
   545 U.S. 967 (2005)......................................................................14, 20

*Nicolas v. MCI Health and Welfare Plan No. 501*,
   453 F. Supp. 2d 972 (E.D.Tex.2006) ........................................................24

*Odom v. Metropolitan Life Ins. Co.*,
   2011 WL 4014445 (M.D.Tenn., Sept. 9, 2011) ................................12, 17, 31

*Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*,
   547 F.3d 531 (6th Cir.2008) ................................................................16, 25

*Seymour v. Walker*,
   224 F.3d 542 (6th Cir.2000) ........................................................................19

*Shanehchian v. Macy's, Inc.*,
   251 F.R.D. 287 (S.D.Oh.2008)......................................................................24

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944).....................................................................................22

*Thornton v. Graphic Communications Conference of Int'l. Broth.
of Teamsters Supplemental Retirement and Disability Fund*,
   566 F.3d 597, 616 (6th Cir.2009) ................................................................30

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)..............................................................................17, 30

**Rules**

Fed.R.Civ.P. 12(b)(6)...................................................................................9

Fed.R.Civ.P. 59 .................................................................................*passim*

**Statutes**

29 U.S.C. §1001(b) ........................................................................18, 22, 24, 28

29 U.S.C. §1104(a)(1)(D) .......................................................................*passim*

29 U.S.C. §1110(a) ...........................................................................29, 30

29 U.S.C. §1113 ......................................................................................30

29 U.S.C. §1132(a)(1)(B) .....................................................................*passim*

29 U.S.C. §1132(a)(3).........................................................................5, 8, 9, 13

29 U.S.C. §1132(e) ...................................................................................18

29 U.S.C. §1132(e)(2)........................................................................12, 22, 24, 28

45 U.S.C. § 51 ..........................................................................................27

45 U.S.C. § 56 ..........................................................................................27

### Miscellaneous

H.R. Rep. No. 93-533 (1973), 1974 U.S.C.C.A.N. 4639 ........................................24

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Oral argument is requested. The parties and the Court would benefit from oral argument.

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

On October 23, 2012, Plaintiff-Appellant Roger Smith filed a complaint seeking relief for Defendant-Appellee Aegon Companies Pension Plan's reduction of his pension benefits eleven (11) years after he retired and commenced his monthly benefits. Complaint, RE 1, Page ID # 1-8. Aegon filed its answer denying his claims. Answer, RE 8, Page ID # 81-91. Aegon also filed a motion to dismiss based upon a forum selection clause inserted into the plan document seven (7) years after Mr. Smith retired and commenced benefits. Motion to Dismiss, RE 7, Page ID # 49-50.

On January 28, 2013, the District Court granted Aegon's motion and dismissed Mr. Smith's complaint based upon the "absence of proper venue." RE 14, Page ID # 181-186 (dismissing complaint without prejudice).

Based on what he considered a clear error of law, as well as intervening case law, Mr. Smith filed a Rule 59 motion asking the District Court to alter, vacate or amend the January 28, 2013 order. RE 15, Page ID # 187-193.

On March 12, 2013, the District Court denied Mr. Smith's Rule 59 motion. RE 18, Page ID # 211-212.

On April 11, 2013, Mr. Smith filed his notice of appeal. Notice of Appeal, RE 23, Page ID # 224-225.

## STATEMENT OF ISSUES FOR REVIEW

Whether the District Court erred as a matter of law in finding the forum selection clause, added to the plan document seven years after Mr. Smith retired and commenced benefits, was enforceable.

## STATEMENT OF THE CASE

This is an ERISA action seeking relief, and corresponding damages, for the Aegon Plan's decision to reduce Mr. Smith's pension benefits eleven (11) years after he retired and commenced receiving his benefits.

In consideration for Mr. Smith agreeing to remain employed with Commonwealth General Corporation ("CGC") through the completion of a corporate merger with Aegon USA, CGC agreed to provide Mr. Smith with severance benefits. In particular, the terms of the severance agreement stated Mr. Smith would receive two benefits – a lump sum payable from the CGC pension plan and a periodic monthly income from a non-qualified excess benefit plan. Mr. Smith would also remain eligible to receive his previously accrued $1,066.54 per month from the pension plan. The combined total of his accrued monthly pension ($1,066.54) and his severance benefit payable from the non-qualified excess benefit plan ($1,122.97) was $2,189.51.

Mr. Smith complied with his obligations under the severance agreement and remained employed until February 29, 2000. At that time, and as agreed, Mr. Smith received his severance benefits. He received the promised lump sum payment – paid from the pension plan. He also received his periodic monthly income payable from the non-qualified excess benefit plan. However, instead of paying this severance benefit from the non-qualified excess benefit plan as agreed, CGC paid both his severance benefit and his accrued pension benefit from the pension plan – paying him the combined total of $2,189.51 per month.

Eleven years later, in August 2011, Mr. Smith was contacted not by CGC, but instead by the Aegon Companies Pension Plan (the successor to the CGC pension plan).  The Aegon Plan stated Mr. Smith had been overpaid under the terms of the plan.  Therefore, the Aegon Plan reduced his pension plan periodic payment by roughly half the amount it now deemed to be correct – his accrued monthly pension benefit of $1,066.54. So as to recoup what it claimed was an overpayment for the prior eleven years, the Aegon Plan further reduced the amount of his current periodic pension payment to zero ($ 0.00) — reflecting the pensions prior payment of the severance benefit payable from the non-qualified excess benefit plan ($1,122.97).

On October 23, 2012, Mr. Smith filed a complaint challenging the Aegon Plan's actions.  He asserted ERISA claims under both 29 U.S.C. §1132(a)(1)(B) and 1132(a)(3).  The Aegon Plan moved to dismiss his claims based on a forum selection clause it unilaterally added to the plan in 2007 – seven (7) years after Mr. Smith retired and commenced benefits.  The District Court subsequently granted the Aegon Plan's motion, as well as denied Mr. Smith's Rule 59 motion.  On April 11, 2013, Mr. Smith filed his notice of appeal.   Notice of Appeal, RE 23, Page ID # 224-225.

## STATEMENT OF FACTS

### A.    Mr. Smith's employment and VEERP benefits.

Mr. Smith was employed by Commonwealth General Corporation ("CGC"). Complaint, RE 1, Page ID #2 at ¶8. As an employee of CGC, Mr. Smith was eligible for and participated in the CGC pension plan where he accrued non-forfeitable pension benefits. *Id.*

In the late 1990's, CGC merged with Aegon USA.  As part of its merger efforts, and to ensure a smooth transition, CGC approached various employees and offered them enhanced wages and benefits if they agreed to remain employed for specified periods of time tied to the completion of the merger.  Mr. Smith was one of the employees CGC approached. *Id.* at ¶9.  At the time CGC approached Mr. Smith, he was fully vested in his CGC pension plan. *Id.* at ¶10.

On January 16, 1999, Mr. Smith agreed to accept CGC's offer of enhanced wages and benefits in exchange for his agreement to remain with the company through the merger. *Id.*  The terms of their agreement were reflected in the Voluntary Employee Retention and Retirement Program ("VERRP"). *Id.*; *See also*, VERRP, RE 1-1, Page ID #9-32.  As a written contract, the VERRP modified Mr. Smith's employment relationship with CGC, notably by way of providing additional compensation upon his termination (both lump sum and monthly). *Id.* at ¶11. Mr. Smith reasonably relied on the terms of the VERRP agreement, including the amount of the monthly compensation, in accepting CGC's offer. *Id.*

6

Pursuant to the VERRP, Mr. Smith's agreed termination date was to be February 29, 2000. *Id*. at ¶12. Further, Mr. Smith was to receive an enhanced monthly retirement income of $2,189.51 per month until he attained age 62 and then to $2,001.63 per month thereafter for life. *Id*. Again, Mr. Smith accepted CGC's offer of enhanced compensation and continued working throughout the merger until the agreed termination date - February 29, 2000. *Id*. at ¶13. At that time, Mr. Smith's employment ended and he completed the requisite paperwork to receive the agreed wages and benefits. *Id*. Effective March 1, 2000, Mr. Smith began to receive the agreed $2,189.51 monthly retirement income from the CGC Plan (now Aegon Plan). *Id.* at ¶14.

When Mr. Smith retired, the CGC Plan provided him with different monthly retirement income benefit figures than indicated by the terms of the VERRP. *Id*. at ¶15. Specifically, by letter dated May 16, 2000, the CGC Plan wrote to Mr. Smith and stated that it believed there was an error "on the memo regarding the benefit amount due to" him. *Id.* The CGC Plan stated the "correct amount of your benefit is $1,122.97" as opposed to the VERRP agreed $2,189.51. *Id.* Because of the significant difference in the figures, Mr. Smith contacted the CGC Plan for an explanation of the differing figures. *Id.* at ¶16. Mr. Smith called Norma Frey on May 22, 2000 and asked for further information, noting "why didn't numbers match VERRP booklet?" *Id.* Ms. Frey indicated she would "discuss with Denny and get back to" Mr. Smith. *Id.*

7

Neither Ms. Frey nor "Denny" followed up with Mr. Smith. *Id.* at ¶17. Instead, the CGC Plan paid Mr. Smith the VERRP agreed monthly retirement income benefit of $2,189.51. *Id.* The CGC Plan paid Mr. Smith the VERRP agreed $2,189.51 *for the next 11 years*. *Id.* at ¶18. During this decade, the CGC Plan did not make any effort to contact Mr. Smith concerning the $2,189.51 monthly retirement income benefit. *Id.* Instead, the CGC Plan paid Mr. Smith the VERRP agreed amount. *Id.*

Despite the 11 year gap, and without any warning, the CGC Plan contacted Mr. Smith in July 2011 and insisted that he had been overpaid. *Id.* at ¶20. In a letter dated July 7, 2011, the CGC Plan wrote to Mr. Smith and claimed it had only recently conducted an "audit process to verify the accuracy of payments." *Id.* The CGC Plan now claimed Mr. Smith's pension benefit should have been $1,066.54. *Id.* Based on the audit, the CGC Plan insisted Mr. Smith had been overpaid $153,283.25 and demanded he immediately repay this amount or his future monthly retirement income benefits would be reduced to "$0 until the Plan recoups its overpayments." *Id.* at ¶21. Because he no longer possessed the prior monthly retirement income benefits the CGC Plan alleged he had been overpaid, Mr. Smith was unable to provide any repayment. As a result, the CGC reduced his monthly retirement income benefits to $0 effective September 1, 2011. *Id.* at ¶22.

Mr. Smith contested the CGC Plan's allegations and submitted an appeal, but the appeal was denied. *Id.*

**B.      Mr. Smith's files suit to enforce the VEERP.**

Because his claims arose from the terms of the VEERP, Mr. Smith brought suit seeking to enforce his right to receive the agreed monthly payment.  This action is currently pending before this Court (No. 12-6284) and assigned to the same panel as this appeal. *See*, 6th Circuit Order (April 30, 2013).

**C.      Mr. Smith commences this action.**

Despite his claim to enforce the terms of the VEERP against CGC, out of an abundance of caution, Mr. Smith brought this action against the Aegon Plan as the successor to the CGC Plan.  Complaint, RE 1.   Mr. Smith sought to enforce his claims under ERISA section 502(a)(1)(B) and ERISA section 502(a)(3).[1] *Id.* at Page ID # 6-7, ¶¶32, 36, and 41 (seeking relief under (a)(3)).

**D.      Aegon files a motion to dismiss.**

The Aegon Plan moved to dismiss Mr. Smith's "benefit claims" under Rule 12(b)(6) based on a "forum selection clause."  Mot. to Dismiss, RE 7, Page ID #49 ("The Plan's forum selection provision – which requires all litigation involving the Plan to be filed in federal district court in Cedar Rapids, Iowa – forms the basis for a Rule 12(b)(6) motion to dismiss..."); Memo. to Dismiss, RE 7-1, Page ID #52 ("an ERISA action to recovery benefits.").  In its motion, the Aegon Plan conceded the "forum selection clauses" was not in effect at the time of Mr. Smith's retirement in 2000.  Rather, the amended language was not added to the plan until

---

[1]   29 U.S.C. §1132(a)(1)(B) and §1132(a)(3) respectively.

9

2007, _seven (7) years later_. _Id_. at Page ID # 61 ("The venue provision was added to the Plan by amendment in 2007."). Prior to 2011, when it performed an alleged audit, the Aegon Plan did not notify Mr. Smith that his rights (venue) had been restricted.

Mr. Smith opposed the Aegon Plan's motion to dismiss his benefits claim on several grounds. First, Mr. Smith noted that his claims were enforceable under ERISA. Given the Department of Labor's jurisdiction over ERISA, he referred the District Court to the DOL's opinion that venue clauses were contrary to ERISA and unenforceable. Resp. to Dismiss, RE 11, Page ID # 100. Second, Mr. Smith cited to the fact that the venue provision was not added until long after his retirement and commencement of benefits – noting that in each case where a venue provision was enforced, the venue provision was a part of the plan _prior_ to the claim. _Id_. at Page ID #101 and n.6. Third, Mr. Smith argued the 2000 plan document controls, not the 2007 plan document. _Id_. at Page ID #102.

The District Court granted the Aegon Plan's motion. RE 14, Page ID #181-186. In so ruling, the District Court dismissed not only Mr. Smith's (a)(1)(B) benefits claim, but also his (a)(3) claims as well. _Id._ The District Court did not address the DOL's opinion.

### E.    Mr. Smith seeks relief under Rule 59.

Mr. Smith filed a timely Rule 59 motion to alter, amend or vacate the District Court's order. RE 15, Page ID #187-193. Believing the order "a clear

10

error of law, Mr. Smith directed the Court to the Department of Labor's opinion that forum selection clauses were "unenforceable and incompatible with ERISA." *Id.* at Page ID #188.

> ... *forum selection clauses are incompatible with ERISA*.
> In the ERISA context, the public policy expressed in the statute's broadly-worded venue provision is exceptionally strong given the express provision in ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), which precludes modifying ERISA rights and remedies by contract, as well as the expressly stated statutory goal to 'protect the interests of participants of employee benefits plans and their beneficiaries . . . by providing appropriate remedies, sanctions, and ready access to the Federal courts.'

*Id.* (quoting DOL amicus brief, RE 11-1, Page ID # 119) (emphasis added).  Mr. Smith argued the DOL opinion was entitled to deference.  *Id.* at Page ID # 188-189.

Mr. Smith also noted the contractual nature of ERISA plans and the corresponding required contractual analysis that must occur when reviewing the Aegon Plan's 2007 amendment – in particular, the lack of an arms-length transaction.  *Id.* at Page ID #189-190.  Mr. Smith argued there was no "evidence he had any input, or knowledge, of the contractual change."  *Id.* at Page ID #190. Citing to relevant case law, Mr. Smith argued the 2007 amendment adding the venue provision was not the result of "an arms-length transaction."  *Id.*  In support of his position, Mr. Smith cited intervening case law directly on point.  *Id.* (citing

11

*Coleman v. Supervalu, Inc. Short Term Disability Program*, --- F.Supp.2d ---, 2013 WL 365263 (N.D.Ill., Jan. 31, 2013).[2]

> As defendants would have it, an employer's insertion of a forum selection clause into a plan ought to result in participants having two choices: (1) to forgo participation in the type of benefit plan being offered or (2) to accept the plan and "waive" their § 1132(e)(2) rights. *But a purported "right" subject to such conditions is no right at all.* If that type of "waiver" were permitted, an employer could obliterate any ERISA requirements merely by including a term in its benefits plan that contradicts a statutorily established right. *That would make ERISA no better than an unenforceable wish list, flouting the will of Congress completely.*

*Id.* at *5 (emph. added).

Finally, Mr. Smith also challenged the District Court's decision to dismiss his (a)(3) claim as well as his (a)(1)(B) claim. RE 15, Page ID #191-192. Mr. Smith noted his (a)(3) claims were "properly characterized as seeking relief for ... breach of fiduciary duty." *Id.* at Page ID#191. Based on the nature of his (a)(3) claim, Mr. Smith argued the venue provision would not apply. *Id.*

> … plaintiff's procedural rights are *distinct* from his rights to benefits under the Plan. Therefore, § 1132(a)(1)(B), which is limited to remedying the violation of rights arising under the terms of a plan, cannot provide an adequate remedy for the violation of the plaintiff's procedural rights.

*Odom v. Metropolitan Life Ins. Co.*, 2011 WL 4014445 at *3 (M.D.Tenn., Sept. 9, 2011) (emphasis added).

---

[2]    *Coleman* was entered three days *after* the District Court's order.

Without any substantive discussion, the District Court denied Mr. Smith's Rule 59 motion.  RE 18, Page ID#211-212.   Therefore, Mr. Smith filed this appeal.

## SUMMARY OF ARGUMENT

### I.    THE 2007 VENUE AMENDMENT IS UNENFORCEABLE.

The District Court erred as a matter of law in dismissing Mr. Smith's claims based on the 2007 amendment adding a forum selection clause to the plan terms.

*First*, the District Court failed to afford any deference to the Department of Labor's opinion finding forum selection clauses incompatible with ERISA.  *See*, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-844 (1984) ( "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."); *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005) ("ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. 'Filling these gaps … involves difficult policy choices that agencies are better equipped to make than courts.'").  In sum, "[i]f a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation."  *Id.* at 980; *see also*, *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002); *Battle Creek Health System v. Leavitt*, 498 F.3d 401, 408-409 (6th Cir.2007); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir.1994) (deferring to Department of Labor Advisory Opinion Letter and stating "we must

14

keep in mind that in interpreting [a section of ERISA], we are obliged to accord great deference to DOL interpretations").

*Second*, the amendment was not the product of an arms-length contractual transaction. The courts have consistently held, ERISA plans are contractual in nature (subject to the minimum standards required by ERISA). *See, Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). The disputed venue provision was *not* added until *seven (7) years after* Mr. Smith retired and commenced benefits. He was no longer employed and was no longer an active participant. There is no evidence that he had any input, or knowledge, of the amendment adding the disputed venue limitation. There was not an arms-length transaction. *See e.g., Doe v. Blue Cross and Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir.1997).

> Congress clearly desires open access to several venues for beneficiaries seeking to enforce their rights—and it is equally clear that an employer's *unilateral restriction of that access would undermine Congress' stated desire*.
>
> ... When ERISA plans are formulated, however, participants automatically possess certain rights decreed by Congress. Even if a participant can waive certain of those rights, *it must take more than his or her simple participation* in a company-wide plan unilaterally created by an employer *to hold that the participant's congressionally conferred right has been waived.*

*Coleman*, --- F.Supp.2d ---, 2013 WL 365263 at *6 (emphasis added).

*Third*, the 2000 plan document controls Mr. Smith's rights. It is the plan document in effect at the time Mr. Smith retired and commenced benefits. Mr.

15

Smith's pension claims accrued in 2000. Just as a claim accrues when benefits are denied, it similarly accrues when they are paid. *See*, *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, 547 F.3d 531 (6th Cir.2008); *Fallin v. Commonwealth Ind. Inc. Cash Balance Plan*, 521 F.Supp.2d 592, 597 (W.D.Ky.2007) ("[a]ny expectation of a sum greater [or less] than what was received was 'repudiated' at that time, and could not have reasonably been maintained beyond that point."). The Aegon Plan cannot take unilateral action seven (7) years after the fact so as to limit Mr. Smith's minimum rights under ERISA.

*Fourth*, as a matter of public policy, the 2007 amendment is void. An ERISA plan document cannot override ERISA's broadly-worded venue provision and public policy. *Coleman*, 2013 WL 365263 at *5 ("[E]ven if §1104(a)(1)(D) does not outright foreclose the inclusion of forum selection clauses in benefit plans generally, *the inclusion of such clauses in a plan of the nature at issue here runs counter to the strong public policy announced by Congress in ERISA*.") (emphasis added); *see also*, *Boyd v. Grand Trunk Western R. Co*., 338 U.S. 263 (1949) (finding that where a federal statute incorporates a venue provision intended to create substantial rights, those rights cannot be abrogated even by consensual agreement). The 2007 plan amendment, on which the Aegon Plan relies, is inconsistent with ERISA and, therefore, is unenforceable.

## II.    THE 2007 VENUE AMENDMENT DOES NOT APPLY TO ERISA 502(a)(3) CLAIMS.

Mr. Smith's (a)(3) claims are properly characterized as seeking relief for the Aegon Plan's breach of fiduciary duty.  *See, Varity Corp. v. Howe*, 516 U.S. 489, 492 (1996) (holding that (a)(3) provides individual relief for breach of fiduciary duty claims); *Alexander v. Bosch Automotive Systems, Inc.*, 232 Fed.Appx. 491, 496 (6th Cir.2007) (ERISA 502(a)(3) authorizes a court to award a plaintiff 'appropriate equitable relief' when a defendant violates ERISA.).  His (a)(3) claims, to which the plan venue provision does not apply, are distinct from his (a)(1)(B) benefit claim.  *See*, *Odom*, 2011 WL 4014445 at *3 ("plaintiff's procedural rights are *distinct* from his rights to benefits under the Plan").  Therefore, the Aegon Plan cannot limit the forum in which Mr. Smith may bring his (a)(3) claims.

17

## ARGUMENT

Ultimately, this case concerns a basic issue: whether the Aegon Plan's decision to recalculate and reduce Mr. Smith's vested pension benefits, which he had been receiving with Defendant's knowledge for over eleven (11) years, was proper?  Based upon the AEGON Plan's sudden reduction and recalculation of his vested pension benefits, Mr. Smith filed suit in this Court seeking relief both under 29 U.S.C. §1132(a)(1)(B) and *under §1132(a)(3)*.  Citing 29 U.S.C. §1132(e), Mr. Smith's pleaded venue was proper in the U.S. District Court for the Western District of Kentucky, Louisville Division.

Until his retirement in 2000, Mr. Smith worked for Commonwealth General Corporation ("CGC") in Louisville, Kentucky.  Mr. Smith accumulated his pension benefits while a working as a plan participant in Louisville.  During this time period, CGC maintained its corporate offices and corporate domicile in Kentucky.

In 2007, seven years after Mr. Smith retired and commenced retirement benefits under the CGC pension plan, the successor Aegon Plan was amended to include for the first time a forum selection clause – limiting venue to Des Moines, Iowa.  Based on this 2007 amendment, the Aegon Plan sought dismissal of Mr. Smith's claims.  Mr. Smith opposed the motion citing ERISA's stated public policy (§1001(b)), ERISA's mandated fiduciary duties (§1104(a)(1)(D)), and the Department of Labor's relevant opinion.  However, the District Court held the 2007 venue provision was enforceable and dismissed Mr. Smith's complaint without prejudice.

18

I.      **THE APPELLATE STANDARD OF REVIEW IS DE NOVO.**

A district court's legal conclusions are subject to de novo review.  *See, Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir.2000).  This applies to decisions regarding proper venue.  *See, First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir.1998) ("As the district court's determination of whether a plaintiff has filed his action in the proper venue involves an interpretation of the venue statute, it is a question of law subject to *de novo* review.").

II.     **THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DISMISSING MR. SMITH'S _(a)(1)(B)_ CLAIMS.**

A.      **The Department of Labor's opinion is entitled to deference.**

The District Court erred as a matter of law because it failed to afford any deference to the Department of Labor opinion that forum selection clauses were not permitted under ERISA.

As *Chevron* states, a court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Chevron,* 467 U.S. at 843 n.11.  "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

> "The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."  If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given

19

> controlling weight unless they are arbitrary, capricious,
> or manifestly contrary to the statute.

*Id.* at 843-44 (citation omitted).

As the Supreme Court explained more recently:

> This Court has previously said that, if the statute speaks
> clearly "to the precise question at issue," we "must give
> effect to the unambiguously expressed intent of
> Congress." Chevron, 467 U.S., at 842-843. If, however,
> the statute "is silent or ambiguous with respect to the
> specific issue," we must sustain the Agency's
> interpretation if it is "based on a permissible
> construction" of the Act. Id., at 843. Hence we must
> decide (1) whether the statute unambiguously forbids the
> Agency's interpretation, and, if not, (2) whether the
> interpretation, for other reasons, exceeds the bounds of
> the permissible.

*Barnhart*, 535 U.S. at 217-18.

In *National Cable & Telecommunications Ass'n*, the Supreme Court

explained "ambiguities in statutes within an agency's jurisdiction to administer are

delegations of authority to the agency to fill the statutory gap in reasonable

fashion. 'Filling these gaps … involves difficult policy choices that agencies are

better equipped to make than courts.'" 545 U.S. at 980 (quoting *Chevron*, 467

U.S. at 865-866). In sum, "[i]f a statute is ambiguous, and if the implementing

agency's construction is reasonable, *Chevron* requires a federal court to accept the

agency's construction of the statute, even if the agency's reading differs from what

the court believes is the best statutory interpretation." *Id.* at 980.

This Court recently reiterated the two-step *Chevron* process under which

courts review agency interpretations of statutes they administer:

> 'First, always, is the question whether Congress has
> directly spoken to the precise question at issue.  If the
> intent of Congress is clear, that is the end of the matter;
> for the court, as well as the agency, must give effect to
> the unambiguously expressed intent of Congress.'  The
> Supreme Court has explained that '[t]he judiciary is the
> final authority on issues of statutory construction and
> must reject administrative constructions which are
> contrary to clear legislative intent.'
>
> ... Second, if we determine that Congress has not directly
> addressed the precise question at issue, that is, that the statute is
> silent or ambiguous on the specific issue, we must determine
> 'whether the agency's answer is based on a permissible
> construction of the statute.'  In assessing whether the agency's
> construction is permissible, we 'need not conclude that the
> agency construction was the only one it permissibly could have
> adopted to uphold the construction, or even the reading [we]
> would have reached if the question initially had arisen in a
> judicial proceeding.'  In fact, the agency's construction is
> entitled to deference unless 'arbitrary, capricious, or manifestly
> contrary to the statute.'

*Battle Creek Health System*, 498 F.3d at 408-409 (internal citations omitted).

Finally, in accordance with controlling Sixth Circuit precedent, the

Department of Labor's position is entitled to "great deference."  *See, Bartling*, 29

F.3d at 1072 (deferring to Department of Labor Advisory Opinion Letter and

stating "we must keep in mind that in interpreting [a section of ERISA], we are

obliged to accord great deference to DOL interpretations").

In accordance with *Chevron* and corresponding case law, Mr. Smith

submitted an amicus brief from the Department of Labor addressing the issue of

whether an ERISA plan could adopt a forum selection clause narrowing venue

from a broad national standard to a specific jurisdiction.  RE 11-1, DOL Amicus

Brief, Page ID #119 ("the Secretary files this brief solely in order to argue that

forum selection clauses are incompatible with ERISA").  The DOL further

explained its opinion as follows:

> In the ERISA context, the public policy expressed in the statute's *broadly-worded venue provision* is exceptionally strong given the express provision in ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), which *precludes modifying ERISA rights and remedies* by contract, as well as the expressly stated statutory goal to 'protect the interests of participants of employee benefits plans and their beneficiaries . . . by *providing appropriate remedies, sanctions, and ready access to the Federal courts.*'

*Id*. at Page ID #119 (emphasis added).

The DOL's position is entitled to *Chevron*, or at the very least *Skidmore*,

deference.  *See*, *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  Under *Skidmore*,

an agency's "policy statements" which interpret regulations and statutes the agency

is charged with enforcing are entitled to a "measure of respect."

> The weight [given an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Id.* at 140.

ERISA's stated policy is to provide "*ready access to the Federal courts*."

29 U.S.C. §1001(b) (emph. added).  Further, ERISA's venue provision provides

broad access to the courts.   *See*, 29 U.S.C. §1132(e)(2) (providing participants

with the right to bring an action "in the district where the plan is administered", "where the breach took place", or "where a defendant resides or may be found"). The DOL's position is consistent with this statutory mandate and is entitled to deference.

Based on the DOL's stated position (opinion) concerning ERISA's broad venue provisions, the District Court was required to defer to the DOL's interpretation.

**B.    The venue amendment was not the result of an arms-length transaction.**

As the courts have consistently held, ERISA plans are contractual in nature (subject to the minimum standards required by ERISA).  *See, Russell*, 473 U.S. at 147.

> To recover the benefits due her, she could have filed an action pursuant to §502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the *plan contract*, and to enjoin the plan administrator from improperly refusing to pay benefits in the future. If the plan administrator's refusal to pay *contractually* authorized benefits …

*Id.* (emph. added).  Therefore, it necessarily follows that contractual concepts must be considered in the context of the Aegon Plan's unilateral amendment.

Here, the disputed venue provision was *not* added until *seven (7) years after* Mr. Smith retired and commenced benefits.  He was no longer employed and was no longer an active participant.  There is no evidence Mr. Smith had any input or knowledge of the 2007 amendment adding the disputed venue limitation.   There

was not an arms-length transaction.  *See e.g., Doe v. Blue Cross and Blue Shield United of Wis.*, 112 F.3d 869, 874 (7th Cir.1997).  While this fact is not dispositive, it does support finding the amendment to run afoul of ERISA's Congressional mandate.[3]

In *Coleman v. Supervalu, Inc. Short Term Disability Program*, the court recognized the inherent problem with unilateral changes to ERISA plan terms. 2013 WL 365263 at *5-6 (N.D.Ill.2013).  *Coleman* recognized the chilling effect a forum selection clause would have on participants, as well as the undermining of ERISA's statutory requirements.

> As defendants would have it, an employer's insertion of a forum selection clause into a plan ought to result in participants having two choices: (1) to forgo participation in the type of benefit plan being offered or (2) to accept the plan and "waive" their § 1132(e)(2) rights. *But a purported "right" subject to such conditions is no right at all.* If that type of "waiver" were permitted, an employer could obliterate any ERISA requirements merely by including a term in its benefits plan that contradicts a statutorily established right. *That would make ERISA no better than an unenforceable wish list, flouting the will of Congress completely*.

---

[3]    "Congress intended that the venue provision for ERISA claimants be broad so as to advance their claims." *Nicolas v. MCI Health and Welfare Plan No. 501*, 453 F. Supp. 2d 972, 974 (E.D.Tex.2006); *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D.Oh.2008) (affording  "plaintiff's choice of venue . . . a heightened level of deference" given the statute's "broad choice of venue for all ERISA plaintiffs"); H.R. Rep. No. 93-533 (1973), 1974 U.S.C.C.A.N. 4639, 4655 (ERISA was designed, among other things, to eliminate "jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties."); *See also*, 29 U.S.C. § 1001(b) (ERISA is designed to provide "ready access to the Federal courts [to] protect ... the interests of participants in employee benefit plans and their beneficiaries.").

24

*Id.* at *5 (emphasis added).

Notably, *Coleman* addressed the issue from the perspective of an active participant who had the choice of participating or not participating. *Id.* However, here, Mr. Smith never had a choice. He had been retired for over seven (7) years before the Aegon Plan was unilaterally amended (without any advance notice) to restrict his rights. This amendment runs counter to ERISA's statutory mandate.

> Congress clearly desires open access to several venues for beneficiaries seeking to enforce their rights—and it is equally clear that an employer's *unilateral restriction of that access would undermine Congress' stated desire*.
>
> ... When ERISA plans are formulated, however, participants automatically possess certain rights decreed by Congress. Even if a participant can waive certain of those rights, *it must take more than his or her simple participation* in a company-wide plan unilaterally created by an employer *to hold that the participant's congressionally conferred right has been waived.*

*Id.* at *6 (emphasis added).

## C. The 2000 plan document controls.

The controlling document should be the document in effect at the time Mr. Smith retired and commenced benefits – the 2000 plan document. Mr. Smith's pension claims accrued in 2000. Just as a claim accrues when benefits are denied, it similarly accrues when they are paid. *See*, *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, 547 F.3d 531 (6th Cir.2008); *Fallin v. Commonwealth Ind. Inc. Cash Balance Plan*, 521 F.Supp.2d 592, 597 (W.D.Ky.2007) ("[a]ny expectation of a sum greater [or less] than what was

received was 'repudiated' at that time, and could not have reasonably been maintained beyond that point."). When he retired in 2000, the Aegon Plan effectively repudiated his claim to additional benefits – or conversely to lower benefits. The Aegon Plan cannot take unilateral action seven (7) years after the fact so as to limit Mr. Smith's minimum rights under ERISA.

Courts that have looked at a similar issue, determining whether a plan contained discretionary authority, have reached similar supporting conclusions. Discretionary language serves to alter the procedural standard of review from the default *de novo* standard to the heightened arbitrary and capricious standard. *See*, *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir.2006) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-115 (1989)). Where discretionary language has been added *after* the plan was established, a court must determine which version of the plan applies. The controlling document is the one in place at the time a claimant's right to receive benefits vests. *See e.g.*, *Grosz-Salomon v. Paul Revere Life Ins. Co*., 237 F.3d 1154, 1160 (9th Cir.2001). A plan administrator is unable to simply graft discretion as to a plan benefit that was previously paid and/or vested.

A similar analysis would apply in the context of a venue provision. A plan cannot alter the terms, substantive and procedural, relating to benefits previously approved, paid, and/or vested. The terms of the plan in effect at the time the benefits commence are applicable. The Aegon Plan cannot alter the terms of the CGC Plan document under which Mr. Smith was vested and commenced benefits.

26

**D.    ERISA's strong public policy disfavors forum selection clauses.**

An ERISA plan document cannot override ERISA's broadly-worded venue provision and public policy.  *See, Coleman ,*2013 WL 365263 at *5 ("[E]ven if § 1104(a)(1)(D) does not outright foreclose the inclusion of forum selection clauses in benefit plans generally, *the inclusion of such clauses in a plan of the nature at issue here runs counter to the strong public policy announced by Congress in ERISA*.") (emphasis added).  This conclusion is consistent with Supreme Court precedent*. See*, *Boyd v. Grand Trunk Western R. Co*., 338 U.S. 263 (1949) (finding that where a federal statute incorporates a venue provision intended to create substantial rights, those rights cannot be abrogated even by consensual agreement).

In *Boyd*, the Supreme Court held that a contractual forum selection clause was not enforceable against an injured railroad worker asserting claims under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.  *Id*. at 265.  In reaching its decision, the Court relied in part on FELA's broad venue provision:

> [A]n action may be brought in a district court of the United States, in the district of residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action.

45 U.S.C. §56 (Section 6).  The Court concluded the "right to select the forum granted in [section] 6 *is a substantial right*. It would thwart the express purpose of [FELA] to sanction defeat of that right by the device at bar."  *Id.* at 266 (emphasis

added).

ERISA has adopted a substantially similar venue provision as FELA.

ERISA provides:

> Where an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

Section (e)(2) of ERISA creates a substantial right, similar to section 6 of FELA, arising out of a very important policy to provide ERISA participants and beneficiaries "ready access" to federal courts. *See*, 29 U.S.C. § 1001(b). Asserting that right, Mr. Smith sought to enforce his claims in the Western District of Kentucky, a jurisdiction permitted under ERISA's broad venue provision.

Again, Mr. Smith accumulated all of his plan benefits while working for CGC in Louisville, Kentucky. CGC was domiciled in Kentucky, with its offices in Louisville, Kentucky. Mr. Smith retired and commenced receiving his benefits in Louisville, Kentucky. The CGC plan was administered in Kentucky. The breach took place in Kentucky (where Mr. Smith continues to reside). And, the CGC plan (now Aegon Plan) can be found in Kentucky.

Moreover, just as FELA's Section 6 is substantively similar to ERISA Section 1132(e)(2), FELA's Section 5 (statutory supremacy provision) has a similar counterpart in ERISA. *See*, 29 U.S.C. § 1104(a)(1)(D) ("a fiduciary shall

28

discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter* .") (emphasis added).  Further, 29 U.S.C. § 1110(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part *shall be void as against public policy*." (emphasis added).

The 2007 plan amendment, on which the Aegon Plan relies, is inconsistent with ERISA and, therefore, is unenforceable.  ERISA is a remedial statute specifically designed to give plan participants' "ready access" to federal courts. Under ERISA's terms, Mr. Smith's benefit and fiduciary claims "may be brought" in any federal district court, including Louisville, Kentucky.  By attempting to limit Mr. Smith's right to bring suit in Louisville, Kentucky, the Aegon Plan's amended forum selection clause conflicted with Mr. Smith's ERISA rights – rendering the amendment void as a matter of public policy.  *See also*, M/*S Bremen v. Zapata Off Shore Co*., 407U.S. 1, 15 (1972) ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.").

## III.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DISMISSING MR. SMITH'S *(a)(3)* CLAIMS.

The Aegon Plan did not request or address the basis for dismissing Mr.
Smith's claims asserted under 29 U.S.C. §1132(a)(3).  Mr. Smith's (a)(3) claims
are properly characterized as seeking relief for the Aegon Plan's breach of
fiduciary duty.  *See, Varity Corp. v. Howe*, 516 U.S. 489, 492 (1996) (holding that
(a)(3) provides individual relief for breach of fiduciary duty claims); *Alexander v.
Bosch Automotive Systems, Inc.*, 232 Fed.Appx. 491, 496 (6th Cir.2007) (ERISA
502(a)(3) authorizes a court to award a plaintiff 'appropriate equitable relief' when
a defendant violates ERISA.).

Even assuming an ERISA plan were permitted to limit the venue for a
benefit claim (a)(1)(B), it cannot do so for a claim relating to fiduciary duties.   To
hold otherwise would eviscerate the very purpose of these separate and distinct
statutory non-benefit claims – not to mention rendering express statutory language
moot.  *See e.g.,* 29 U.S.C. §1113 (establishing the limitations period for a breach of
fiduciary duty).  Further, ERISA precludes any plan language that would purport to
limit the responsibility or liability of a fiduciary.

> … any provision in an agreement or instrument which
> purports to relieve a fiduciary from responsibility or
> liability for any responsibility, obligation, or duty under
> this part shall be void as against public policy.

29 U.S.C. §1110(a).

Mr. Smith's (a)(3) claims seek other equitable relief .  *See, Thornton v.
Graphic Communications Conference of Intern. Broth. of Teamsters Supplemental*

*Retirement and Disability Fund*, 566 F.3d 597, 616-617 (6th Cir.2009) ("(a)(3)

authorizes suits by participants… to … obtain other equitable relief.").  His (a)(3)

claims, to which the plan venue provision does not apply, are distinct from his

(a)(1)(B) benefit claim.

> … plaintiff's procedural rights are <u>*distinct*</u> from his rights to
> benefits under the Plan. Therefore, § 1132(a)(1)(B), which is
> limited to remedying the violation of rights arising under the
> terms of a plan, cannot provide an adequate remedy for the
> violation of the plaintiff's procedural rights.

*Odom v. Metropolitan Life Ins. Co.*, 2011 WL 4014445 at *3 (M.D.Tenn.2011)

(emph. added).

The Aegon Plan cannot limit the forum in which Mr. Smith may bring his

(a)(3) claims.  It was reversible error for the District Court to conclude otherwise.

# CONCLUSION

The District Court erred as a matter of law in dismissing Mr. Smith's complaint, both as to his (a)(1)(B) benefits claim and as to his (a)(3) claim. The Court should enter an order reversing the District Court's decision.

---

Dated:  July 22, 2013

Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
*mdg@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Parkway, Ste. 107
Louisville, Kentucky 40223
(502) 244-9331
(502) 244-9334 facsimile

***Counsel for Plaintiff-Appellant***

32

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed.R.App.P. 32(a)(7)(B).  The foregoing brief contains 6,976 words of Times New Roman (14 point) proportional type.  The word processing software used to prepare this brief was Microsoft Word 2010 and Adobe Acrobat 9 Pro.


Dated: July 22, 2013                    s/ Michael D. Grabhorn
                                        Michael D. Grabhorn

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2013 a copy of the foregoing was electronically filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  Parties not registered with the Court's electronic filing system were served this same day by First Class U.S. Mail.

s/ Michael D. Grabhorn
Michael D. Grabhorn

## DESIGNATION OF RELEVANT DISTRICT
## COURT DOCUMENTS

Plaintiff-Appellant, pursuant to 6 Cir. R. 28(b)(1)(A)(i) and 30(g)(1), hereby

designates the following relevant district court documents:

| **Description** | **Record Entry No.** |
|---|---|
| Complaint | RE 1, Page ID #1-8 |
| Voluntary Employee Retention and Retirement Program (VERRP) | RE 1-1, Page ID #9-32 |
| Motion to Dismiss | RE 7, Page ID #49-50 |
| Motion to Dismiss Memorandum | RE 7-1, Page ID #51-66 |
| Answer | RE 8, Page ID #81-91 |
| Response - Motion to Dismiss | RE 11, Page ID # 97-105 |
| Reply - Motion to Dismiss | RE 13, Page ID #155-169 |
| Dept. of Labor *Mozingo* Amicus Brief | RE 11-1, Page ID # 106-138 |
| Order | RE 14, Page ID #181-186 |
| Motion to Alter, Vacate or Amend | RE 15, Page ID #187-193 |
| Response - Motion to Alter, Vacate or Amend | RE 16, Page ID # 195-204 |
| Reply - Motion to Alter, Vacate or Amend | RE 17, Page ID #206-210 |
| Order | RE 18, Page ID #211-212 |
| Notice of Appeal | RE 23, Page ID #224-225 |

A - 3