No. 13-5492
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

ROGER SMITH,
Plaintiff-Appellant

v.

AEGON COMPANIES PENSION PLAN,
Defendant-Appellee
_____

BRIEF OF THE SECRETARY OF LABOR AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFF-APPELLANT
AND URGING REVERSAL
_____

On Appeal from the United States District Court
for the Western District of Kentucky
_____

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor, Plan Benefits
Security Division

ELIZABETH HOPKINS
Counsel for Appellate and Special
Litigation

STACEY E. ELIAS
Trial Attorney

U.S. Department of Labor
Office of the Solicitor, Plan Benefits
Security Division
P.O. Box 1914
Washington, D.C.  20013
202-693-5611
elias.stacey@dol.gov

# **TABLE OF CONTENTS**

Page

Table of Authorities ........................................................................ ii

Questions Presented ........................................................................1

Interest of the Secretary ..................................................................1

Statement of the Case......................................................................2

Summary of Argument ....................................................................9

Argument..........................................................................................11

     I.    Under ERISA Section 502(e), Venue Was Proper In The
          District Court In Kentucky Where Smith Lives............................ 11

     II.   The Forum Selection Clause Is Unenforceable Because It
          Contradicts Sections 502(e)(2) And 404(1)(D) And Is Contrary
          To The Policy Concerns Underlying The Statute ........................ 15

Conclusion ...................................................................... 28

Certificate of compliance ………………………………………………A1

Certificate of service ………………………………………………………A2

# TABLE OF AUTHORITIES

**Federal Cases:**

Barnum v. Mosca,
  2009 WL 982579 (N.D.N.Y. 2009)......................................................................13

Bd. Of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Sullivant Avenue
  Properties, LLC,
  508 F. Supp. 2d 473 (E.D. Va. 2007)..................................................................26

Bernikow v. Xerox Corp. Long-Term Disability Income Plan,
  2006 WL 2536590 (C.D. Cal. Aug. 29, 2006)....................................................19

Blevins v. Pension Plan for the Roanoke Plant Hourly Employees of ITT Industries
  Night Vision,
  2011 WL 2670590 (D.S.C. July 8, 2011)............................................................13

Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron,
  67 F. Supp. 2d 1250 (D. Kan. 1999) ...................................................................26

Bostic v. Ohio River Co. Basic Pension Plan,
  517 F. Supp. 627 (S.D.W. Va. 1981) .......................................................... 12, 13

Boyd v. Grand Trunk Western R. Co.,
  338 U.S. 263 (1949) .................................................................................... 24, 25

Briesch v. Auto. Club of S. California,
  40 F. Supp. 2d 1318 (D. Utah 1999) ..................................................................26

Cargill Inc. v. Prudential Ins., Co. of America,
  920 F. Supp. 144 (D. Colo. 1996) ............................................................... 23 n.5

Carnival Cruise Lines, Inc. v. Shute,
  499 U.S. 585 (1991) .................................................................................... 20, 22

Central States Se. and Sw. Area Pension Fund v. Central Transp., Inc.,
  472 U.S. 559 (1985) .............................................................................................16

**Federal Cases--(cont'd)**

Coleman v. Supervalu, Inc. Short Term Disability Program,
  2013 WL 365263 (N.D. Ill. Jan. 31, 2013) ................................. 15, 18, 19, 20, 21

Coomer v. Bethesda Hosp., Inc.,
  370 F.3d 499 (6th Cir. 2004) ...................................................................7

Curtiss-Wright Corp. v. Schoonejongen,
  514 U.S. 73 (1995) ...................................................................................7

DeFazio v. Hollister Employee Share Ownership Trust,
  406 F. Supp. 2d 1085 (E.D. Cal. 2005) ..............................................27

Donovan v. Cunningham,
  716 F.2d 1455 (5th Cir. 1983) .................................................................1

Eaves v. Penn,
  587 F.2d 453 (10th Cir. 1978) ..............................................................16

Fanning v. Capco Contractors, Inc.,
  711 F. Supp. 2d 65 (D.D.C. 2010)........................................................26

French v. Dade Behring Life Ins. Plan,
  2010 WL 2360457 (M.D. La. 2010).....................................................14

Fulk v. Bagley,
  88 F.R.D. 153 (M.D.N.C. 1980)...........................................................12

Gulf Life Ins. Co. v. Arnold,
  809 F.2d 1520 (11th Cir. 1987) ...................................................... 15, 24

Herman v. NationsBank Trust Co.,
  126 F.3d 1354 (11th Cir. 1997)............................................................16

Holland v. ACL Transp. Servs., LLC,
  815 F. Supp. 2d 46 (D.D.C. 2011)........................................................26

In re Warrick,
  70 F.3d 736 (2d Cir. 1995) ............................................................. 22, 26

**Federal Cases--(cont'd)**

Laborers Nat. Pension Fund v. N. Trust Quantitative Advisors, Inc.,
173 F.3d 313 (5th Cir. 1999) ................................................................16

M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1 (1972) ................................................... 10, 20, 22 n.4, 25, 27

McCracken v. Auto. Club of S. California, Inc.,
891 F. Supp. 559 (D. Kan. 1995) .........................................................15

Mezyk v. U.S. Bank Pension Plan,
2009 WL 3853878 (S.D. Ill. 2009).......................................................21

Nicolas v. MCI Health and Welfare Plan No. 501,
453 F. Supp. 2d 972 (E.D. Tex. 2006) ......................................... 11, 12

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981) ..................................................................... 23 n.5

Rodriguez v. PepsiCo Long Term Disability Plan,
716 F. Supp. 2d 855 (N.D. Cal. 2010)...................................................27

Rogal v. Skilstaf, Inc.,
446 F. Supp. 2d 334 (E.D. Pa. 2006)............................................. 19, 27

Scheidt v. Klein,
956 F.2d 963 (10th Cir. 1992) ..................................................... 23 n.5

Scherk v. Alberto-Culver Co.,
417 U.S. 506 (1974) ...................................................................... 22 n.4

Schoemann v. Excellus Health Plan, Inc.,
447 F. Supp. 2d 1000 (D. Minn. 2006) ................................................13

Shanehchian v. Macy's, Inc.,
251 F.R.D. 287 (S.D. Ohio 2008)......................................... 12, 22, 26

Shearson/American Express, Inc. v. McMahon,
482 U.S. 220 (1987) ...........................................................................18

**Federal Cases--(cont'd)**

Simon v. Pfizer Inc.,
  398 F.3d 765 (6th Cir. 2005) ...............................................................6, 18

Sneed v. Wellmark Blue Cross & Blue Shield,
  2008 WL 1929985 (E.D. Tenn. April 30, 2008) ...............................................6, 27

Sprague v. Gen. Motors Corp.,
  133 F.3d 388 (6th Cir. 1998) .................................................................7

Stewart Org., Inc. v. Ricoh Corp.,
  487 U.S. 22 (1988) ..................................................................... 23 n.5

Van Dusen v. Barrack,
  376 U.S. 612 (1964) .................................................................... 23 n.5

Varsic v. U.S. Dist. Court for the Cent. Dist. of California,
  607 F.2d 245 (9th Cir. 1979) ......................................................... 12, 15

Viti v. Guardian Life Ins. Co. of Am.,
  817 F. Supp. 2d 214 (S.D.N.Y. 2011) ...................................................21

Waeltz v. Delta Pilots Ret. Plan,
  301 F.3d 804 (7th Cir. 2002) ......................................................... 14, 15

Wallace v. Amer. Petrofina, Inc.,
  659 F. Supp. 829 (E.D. Tex. 1987) .....................................................12

Williams v. CIGNA Corp.,
  2010 WL 5147257 (W.D. Ky. Dec. 13, 2010) ...................................... 5 & passim

Wong v. PartyGaming Ltd.,
  589 F.3d 821 (6th Cir. 2009) ....................................... 6, 19 n.3, 23 n.5

**Statutes:**

Federal Arbitration Act:

9 U.S.C. § 2...............................................................................18

v

**Statutes--(cont'd):**

9 U.S.C. § 3 ...................................................................................................18

28 U.S.C. § 1404 ............................................................................................22

28 U.S.C. § 1404(a) ......................................................... 22 n.4, 23, 23 n.5, 26

Employee Retirement Income Security Act of 1974,
    as amended, 29 U.S.C. 1001 et. seq.:

    Section 2, 29 U.S.C. § 1001(b)............................................... 2, 9, 10, 11

    Section 404 (a)(1)(D), 29 U.S.C. § 1104(a)(1)(D)...................... 7, 10, 15, 16, 17

    Section 502, 29 U.S.C. § 1132 .......................................................1

    Section 502(e), 29 U.S.C. § 1132(e) ...................................... 8, 9, 15

    Section 502(e)(2), 29 U.S.C. § 1132(e)(2) ........................... 1 & passim

    Section 503, 29 U.S.C. § 1133 ......................................................16

    Section 505, 29 U.S.C. § 1135 .......................................................1

Federal Employers' Liability Act (FELA):

45 U.S.C. § 55.................................................................................................25

45 U.S.C. § 56.................................................................................................25

**Federal Regulations:**

29 C.F.R. § 2560.503-1(b)(3) ..................................................................17

29 C.F.R. § 2560.503-1(c)(3)................................................................ 18 n.2

**Miscellaneous:**

H. R. Rep. No. 93-533, (1973)
  reprinted in 1974 U.S.C.C.A.N. 4639, 4655 ......................................26

**Miscellaneous—(cont'd):**

H. R. Rep. No. 93-553, (1973)
  reprinted in 1974 U.S.C.C.A.N. 4639, 4655 ......................................................11

Claims Procedure FAQs, D-6,
  available at  www.dol.gov/EBSA/faqs_faq_claims_proc_reg.html ............ 18 n.2

Fed.R.App.P. 29(a) ...........................................................................................2

17 Am. Jur. 2d Contracts § 521 (1980 supp)................................................... 12, 13

## QUESTIONS PRESENTED

1.  Whether the venue provision of the Employee Retirement Income Security act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(2), which provides that an ERISA suit may be brought, among other places, "where the breach took place," allows a plan participant to bring a suit for improperly denied benefits in the district court for the district where he lives and worked.

2.  Whether ERISA invalidates a forum selection clause, which was added as a plan amendment to an ERISA-covered pension plan seven years after the participant retired and began receiving benefits, and which precludes the participant from bringing a suit for benefits in a federal court where he lives (and where he worked) and instead requires him to bring suit more than 500 miles from his home.

## INTEREST OF THE SECRETARY

The Secretary of Labor has primary authority to interpret and enforce the provisions of Title I of ERISA to ensure fair and impartial plan administration and compliance with ERISA's requirements.  See 29 U.S.C. §§ 1132, 1135; Donovan v. Cunningham, 716 F.2d 1455, 1462-63 (5th Cir. 1983).  ERISA section 502(e)(2) liberally provides that a participant may bring suit for plan benefits where the plan is administered, "where the breach took place or where the defendant resides or may be found."  29 U.S.C. § 1132(e)(2).  The "breach took place" provision has

1

correctly been interpreted to allow plan participants and beneficiaries to bring benefit claims where they reside, an interpretation that well serves the congressionally expressed goal to provide plan participants and their beneficiaries with "ready access to the Federal courts." 29 U.S.C. § 1001(b). The Secretary has a strong interest in ensuring that courts continue to properly interpret this provision. The Secretary also has a strong interest in ensuring that this jurisdictional provision governs ERISA benefits suits rather than any forum selection clause to the contrary. Otherwise, employers and insurers could unilaterally erect jurisdictional and financial obstacles that would impede participants and their beneficiaries from enforcing their important statutory rights.

The Secretary files this brief pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE CASE

Plaintiff Roger Smith was a long-time employee of Commonwealth General Corporation ("CGC"), who worked his entire career in Louisville, Kentucky, where CGC was located. January 28, 2013 Order, RE 14, Page ID # 181. CGC sponsored an ERISA-covered pension plan, the CGC Retirement Plan ("CGC Plan"), in which Smith was a participant. Id. In the late 1990s, CGC merged with AEGON USA ("AEGON"), a large life insurance company that operates across the United States. Id. As a result of this merger, Smith became a participant in the

2

AEGON Companies Pension Plan ("AEGON Plan" or the "Plan"), also an ERISA-covered plan.  Id.  Smith retired and began receiving benefits effective March 1, 2000.  Id.  At no time prior to his retirement did the AEGON Plan, or its predecessor, the CGC Plan, contain any forum selection clause purporting to control the venue of participant or beneficiary ERISA claims.  Id.  at Page ID # 184.

Around the time of the merger, CGC and Smith allegedly reached an agreement under which Smith would receive enhanced wages and retirement benefits in exchange for remaining with the company through the merger, with his retirement date set at February 29, 2000.  Compl., RE 1, Page ID # 2-3.  The terms of this agreement were set forth in a Voluntary Employee Retention and Retirement Program (VERRP).  Id.  Smith alleges that, under this agreement, his monthly pension benefits were to be $2,189.51.  Id. at Page ID # 3.

The first dispute between the parties arose shortly after Smith retired.  In May 2000, a representative of the AEGON Plan wrote Smith and informed him that there was an error in his previously calculated benefits and that his monthly payment of $2,189.51 would be reduced to $1,122.97.  Id.  Smith contacted the AEGON Plan and requested an explanation and was told that someone would get back to him.  Id.  According to the complaint, no one did so for nearly 11 years, during which time the AEGON Plan continued to pay Smith $2,189.51 monthly.

Id. at Page ID # 4.  In the meantime, in 2007, seven years after Smith retired,

AEGON amended the Plan to include a forum selection clause purporting to

require that any action involving the AEGON Plan be brought in Cedar Rapids,

Iowa.  January 28, 2013 Order, RE 14, Page ID # 184.  Then in July 2011, the

AEGON Plan wrote another letter to Smith stating that it had recently conducted

an audit and determined that Smith's monthly benefit for the previous 11 years

should have been only $1,066.54.  Compl., RE 1, Page ID # 4.  In addition, the

AEGON Plan informed Smith that he needed to repay the AEGON Plan more than

$150,000 in overpayments and that, if he failed to do so, his monthly benefit would

be reduced to $0.  Id. at Page ID # 4-5.  Smith alleges that he did not have the

funds to repay the Plan and, consequently, beginning September 2011, the

AEGON Plan stopped paying Smith's retirement benefits.  Id. at Page ID # 5.

Smith tried unsuccessfully to resolve this matter through the Plan's claims

procedure.  Id.  When that failed, he filed suit in state court in Kentucky, where he

lives, against CGC, alleging breach of contract and other state law claims.  Order

in 12-194, RE 7-2, Page ID # 67-68.  CGC removed the case to the federal District

Court for the Western District of Kentucky and that court determined that the

VERRP is an ERISA-covered plan and that Smith's state-law claims were therefore

preempted by ERISA.  Id. at Page ID # 68.  That matter is on a separate appeal to

4

this Court.[1]  In addition, Smith also filed this federal ERISA action for benefits in the Western District of Kentucky against the AEGON Plan.

The AEGON Plan moved to dismiss the ERISA action on the grounds of improper venue, asserting that Smith was required to file this action in the federal court for the Northern District of Iowa.  Defendant's argument was twofold.  First it asserted that the Western District of Kentucky was not a proper venue under ERISA section 502(e)(2) because it is neither where the plan is administered by AEGON nor where the defendant, the AEGON Plan, resides, and it is not where the breach occurred because no fiduciary breach is alleged.  Reply Memorandum on Motion to Dismiss, RE 13, Page ID # 155-58.  Second, the AEGON Plan argued that, in any event, the forum selection clause in the amended plan trumps the ERISA venue provision and, because Smith did not bring suit in Cedar Rapids, Iowa, his suit should be dismissed.  January 28, 2013 Order, RE 14, Page ID # 183.

The district court dismissed the case on the latter grounds based on the forum selection provision, and did not address the former argument that venue was not proper in Kentucky under ERISA's statutory provision.  Id. at Page ID # 185. In this regard, the court relied on Williams v. CIGNA Corp., 2010 WL 5147257 (W.D. Ky. Dec. 13, 2010), an earlier decision of the same court involving an identical forum selection clause.  Id. at Page ID # 183.  Noting that the majority of

---

[1] The Secretary did not file an amicus brief in that appeal and is not addressing that issue.

5

district courts confronted with the issue have upheld such provisions, the <u>Williams</u>

court reasoned that these courts have generally analogized forum selection clauses

to mandatory arbitration clauses in ERISA plans, which the Sixth Circuit has held

to be enforceable.  <u>Id.</u> *3, *4 (citing <u>Simon v. Pfizer Inc.</u>, 398 F.3d 765, 773 (6th

Cir. 2005)).  The court reasoned that "[i]f a party can mandate the procedure by

which a decision is reached, there is no reason to believe the forum where the

decision is made is of greater significance."  2010 WL 5147257, at *4 (quoting

<u>Sneed v. Wellmark Blue Cross & Blue Shield</u>, 2008 WL 1929985, *3 (E.D. Tenn.

April 30, 2008)).  Thus, the <u>Williams</u> court concluded that "Congress did not

intend to usurp the right of private parties to predetermine the situs of anticipated

litigation under ERISA," noting that the statute provides "that actions under ERISA

'<u>may</u> be brought in the district where the plan is administered, where the breach

took place, or where a defendant resides or may be found.'"  2010 WL 5147257, at

*4 (citing ERISA section 502(e)(2)).  Applying <u>Williams</u>, as well as the Sixth

Circuit's decision in <u>Wong v. PartyGaming Ltd.</u>, 589 F.3d 821 (6th Cir. 2009),

concerning the general applicability of forum selection clauses, the <u>Smith</u> court

concluded that the forum selection clause should be enforced because Smith did

not argue that "the clause was induced by fraud, that the Cedar Rapids federal court

would ineffectively or unfairly handle the case, or that the inconvenience to

Plaintiff is unjust or unreasonable." January 28, 2013 Order, RE 14, Page ID #
183.

      The district court noted that, unlike in this case, <u>Williams</u> involved a forum
selection clause that was part of the plan at the time the participant retired. <u>Id.</u> at
Page ID # 183-84. The <u>Smith</u> district court found this factual distinction irrelevant,
however, because plan administrators "are generally free under ERISA, for any
reason, at any time, to adopt, modify, or terminate welfare plans" and that "[t]his
rule applies equally to pension benefit plans." <u>Id.</u> at Page ID # 184 (quoting
<u>Coomer v. Bethesda Hosp., Inc.</u>, 370 F.3d 499, 508 (6th Cir. 2004); <u>Curtiss-Wright</u>
<u>Corp. v. Schoonejongen</u>, 514 U.S. 73, 78 (1995) (internal quotation marks
omitted)). The court noted that the only limitation on such amendments is that
they may not "retroactively limit vested benefits," and the forum selection clause
did not do so. <u>Id.</u> (citing <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 400 (6th
Cir. 1998)).
The court also concluded that enforcement of the forum selection provision was
consistent with ERISA's plan document rule set forth in ERISA section
404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), because the Plan expressly reserved the
right of the plan sponsor to amend the Plan at any time. <u>Id.</u> at Page ID # 184-85.
Finally, because the Plan's forum selection clause required that suit be brought "in
Cedar Rapids, where the Plan is administered and where the Defendant [AEGON

Plan] resides," <u>id.</u> at Page ID # 185, the court concluded that it was consistent with ERISA's venue provision, which likewise provides venue "'in the district where the plan is administered, . . . and where a defendant resides or may be found.'" <u>Id.</u> (quoting 29 U.S.C. § 1132(e)).

## SUMMARY OF ARGUMENT

The Western District of Kentucky is a proper venue for Smith's ERISA pension benefits claims pursuant to section 502(e), 29 U.S.C. § 1132(e). As a number of district courts have correctly held, a benefit claimant's residence is where the "breach" – the wrongful denial of plan benefits – occurred, and thus is a proper venue under section 502(e). Not only is this the better reading of the statutory text, but, were it otherwise, claimants would, in many circumstances, be forced to bring their claims far from where they live, a result inconsistent with ERISA's expressly stated goal to "protect the interests of participants of employee benefits plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b) (emphasis added). Moreover, in this case, the claimant's residence, Louisville, Kentucky, is also where he worked and where AEGON (the plan sponsor and one of the country's largest insurance companies), can be found. Thus, section 502(e) plainly makes the district court in the Western District of Kentucky a proper venue for Smith's ERISA suit for Plan benefits.

The forum selection clause contained in the amended AEGON Plan – which purports to forbid clamant from filing his ERISA suit in Kentucky – is inconsistent with ERISA and therefore unenforceable. In precluding suit anywhere other than a federal district court in Cedar Rapids, Iowa, a venue with which Smith has no

9

connection, including in Kentucky where the statute plainly provides venue, the forum selection provision at issue in this case conflicts with ERISA's broad venue provision, which was designed to further ERISA's goal of providing access to courts for plan participants and beneficiaries, free of jurisdictional obstacles like the plan provision at issue in this case. ERISA's policies and provisions supersede the general judicial policy of enforcing "contractual choice-of-forum" clauses, which the Supreme Court has cautioned "should be held unenforceable if enforcement would contravene strong public policy," including policy "declared by statute." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-10, 15 (1972). In the ERISA context, these policies are exceptionally strong given the express provision in ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), which precludes enforcement of plan provisions that interfere with ERISA rights and remedies, and the congressional intent spelled out in the first section of ERISA that plan participants and beneficiaries be afforded "ready access to the Federal courts." 29 U.S.C. § 1001(b). Furthermore, in this case, the main reason articulated by most courts for giving effect to contractual forum selection clauses – honoring contractual provisions freely negotiated between parties of roughly equal bargaining power – is meaningless because AEGON unilaterally amended the Plan to include the offensive forum selection clause long after Smith had retired and first started receiving pension benefits.

10

## **ARGUMENT**

I.    UNDER ERISA SECTION 502(e), VENUE WAS PROPER IN THE
DISTRICT COURT IN KENTUCKY WHERE SMITH LIVES

Congress enacted ERISA, among other things, in order to eliminate

"jurisdictional and procedural obstacles which in the past appear to have hampered

effective enforcement of fiduciary duties."  H.R. Rep. No. 93-553 (1973), reprinted

in 1974 U.S.C.C.A.N. 4639, 4655.  Congress emphasized this point in the very first

section of the statute, declaring that ERISA is designed to provide "ready access to

the Federal courts" so as "to protect . . . the interests of participants in employee

benefit plans and their beneficiaries."  29 U.S.C. § 1001(b).

Consistent with the congressional goal of removing jurisdictional barriers

that would prevent plan participants and their beneficiaries from asserting their

statutory rights, ERISA section 502(e)(2) provides broad jurisdiction for benefit

claims:

> Where an action under this title is brought in a district court of the United
> States, it may be brought in the district where the plan is administered,
> where the breach took place, or where the defendant resides or may be
> found, and process may be served in any other district where a defendant
> resides or may be found.

29 U.S.C. §1132(e)(2) (emphasis added).  Thus, courts have correctly recognized

that "Congress intended that the venue provision for ERISA claimants be broad so

as to advance their claims."  Nicolas v. MCI Health and Welfare Plan No. 501, 453

F. Supp. 2d 972, 974 (E.D. Tex. 2006); see Shanehchian v. Macy's, Inc., 251

F.R.D. 287, 292 (S.D. Ohio 2008) (affording ERISA "plaintiff's choice of venue

. . . a heightened level of deference" given the statute's "broad choice of venue for

all ERISA plaintiffs").  And, in determining whether venue is proper, "the court

must bear in mind that the ERISA venue provisions have been motivated by a

liberal congressional purpose and must be construed accordingly."  Wallace v.

Amer. Petrofina, Inc., 659 F. Supp. 829, 831 (E.D. Tex. 1987) (citing Varsic v.

U.S. Dist. Court for the Cent. Dist. of California, 607 F.2d 245, 248 (9th Cir.

1979)).  Indeed, through 502(e)(2), "Congress intended to open the federal forum

to ERISA claims to the fullest extent possible."  Fulk v. Bagley, 88 F.R.D. 153,

167 (M.D.N.C. 1980).

In this case, Smith correctly asserts that the "breach took place" within the

meaning of section 502(e) in the Western District of Kentucky where he worked

and resides.  "Courts construing the phrase 'where the breach took place' have

analogized the breach in an ERISA action [for plan benefits] to a breach of

contract, and have turned to contract law to determine where a breach takes place."

Wallace, 659 F. Supp. at 832.  In contract law, "the place where a cause of action

for breach of contract arises is generally – almost universally – the place where the

contract is performed."  Bostic v. Ohio River Co. Basic Pension Plan, 517 F. Supp.

627, 636 (S.D.W. Va. 1981) (quoting 17 Am. Jur. 2d Contracts § 521, at p. 1008

(1980 supp.) (other citations omitted)).  In the context of an ERISA claim for

benefits, "it would be the place where pension [or other] benefits are received,

which is plaintiff's residence."  Bostic, 517 F. Supp. at 636.  Thus, in such cases,

numerous courts have concluded that venue is "appropriate in the district where the

plaintiff resides," despite expressly recognizing that the language "where the

plaintiff resides," which appears in other federal venue provisions, "is noticeably

absent from" section 502(e)(2).  Id. at 637; See also Blevins v. Pension Plan for the

Roanoke Plant Hourly Employees of ITT Industries Night Vision, 2011 WL

2670590, at *2 (D.S.C. July 8, 2011) ("the vast majority of courts have found that a

breach occurs in the location 'where the beneficiary was supposed to receive his

benefits, i.e., his residence.'") (citing cases); Barnum v. Mosca, 2009 WL 982579

N.D.N.Y. 2009); Schoemann v. Excellus Health Plan, Inc., 447 F. Supp. 2d 1000,

1002 (D. Minn. 2006) (rejecting the argument that, for purposes of ERISA venue, a

breach takes place where the decision to deny coverage is made because "it is hard

to believe that Congress intended that the ERISA venue provision be skewed so

heavily in favor of defendants and so heavily against beneficiaries").

    Not only is this the better reading of the text of section 502(e)(2), it best

serves ERISA's protective purposes and Congress' intent to provide plan

participants and beneficiaries with "ready access" to the courts.  Allowing ERISA

plaintiffs to bring suit in the federal district where they live is especially important

13

where plan benefits are at issue because the claimants in these cases – retirees on a limited budget, sick or disabled workers, widows and other dependents – are often the most vulnerable individuals and the least likely to have the financial or other wherewithal to litigate in a distant forum. See French v. Dade Behring Life Ins. Plan, 2010 WL 2360457, at *3 (M.D. La. 2010) (reading 502(e)(2) not to allow suit where claimants live "would often result in depriving ERISA beneficiaries of the ability to sue for their health, disability, and life insurance benefits where they live and work since, in today's economy, many individuals are employed by national and international companies that administer plans in locations far removed from the residential locations of their employees").

Moreover, Smith asserts in his complaint that Defendant AEGON Plan "may be found" in Louisville, Kentucky. Compl., RE 1, Page ID # 1. Although Smith did not yet have the chance to develop facts supporting this in the district court, this appears likely to be the case considering that AEGON, a large insurance company with a national presence has, since 1993, had a headquarters for a number of its divisions in Louisville, which the Western District of Kentucky encompasses, and undoubtedly, in addition to Smith, many of its employees worked and received their pension and other employee benefits there. See Waeltz v. Delta Pilots Retirement Plan, 301 F.3d 804, 810 (7th Cir. 2002) ("A fund can be found in a

14

judicial district if it has the sort of minimum contacts with that district that would

support the exercise of personal jurisdiction"); <u>Varsic</u>, 607 F.3d at 248 (same).

    II.    The Forum Selection Clause Is Unenforceable Because It Contradicts Sections 502(e)(2) And 404(1)(D) And Is Contrary To The Policy Concerns Underlying The Statute

For many of the same reasons, forum selection clauses in ERISA plans that

purport to eliminate proper statutory venues are inconsistent with ERISA and its

protective purposes.  As the District Court for the Northern District of Illinois

recently observed in an opinion endorsing the Secretary's view, section 502(e) "is

not a neutral provision merely describing the venues in which ERISA actions can

be heard, but is rather intended to grant an affirmative right to ERISA participants

and beneficiaries."  <u>Coleman v. Supervalu, Inc. Short Term Disability Program</u>,

2013 WL 365263 (N.D. Ill. Jan. 31, 2013) (citing <u>Gulf Life Ins. Co. v. Arnold</u>, 809

F.2d 1520, 1524-25 (11th Cir. 1987)).

Plans cannot alter ERISA's "liberal venue provision," <u>see</u> <u>McCracken v.</u>

<u>Auto. Club of S. California, Inc.</u>, 891 F. Supp. 559, 561 (D. Kan. 1995), by

adopting a more limited contractual forum selection provision in plan documents

because the statute precludes plan terms that are inconsistent with the provisions of

ERISA.  Specifically, ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D),

mandates that although plan fiduciaries are required to follow plan documents,

they may do so only "insofar as such documents and instruments are consistent

with the provisions" of Title I and Title IV of ERISA.  As 404(a)(1)(D) makes

clear, when plan terms and ERISA rights conflict, the plan terms must give way.

Thus, plan fiduciaries must reject plan terms that are contrary to the statute or the

Secretary's regulations, and courts may not give such provisions effect.  E.g.,

Central States, Se. and Sw. Area Pension Fund v. Central Transp., Inc., 472 U.S.

559, 568 (1985) ("trust documents cannot excuse trustees from their duties under

ERISA"); Herman v. NationsBank Trust Co., 126 F.3d 1354, 1368 (11th Cir. 1997)

("According to § 1104(a)(1)(D), NationsBank was obligated to determine whether

the plan provisions" at issue "were contrary to ERISA"); Laborers Nat. Pension

Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir. 1999)

("In case of a conflict, the provisions of the ERISA policies as set forth in the

statute and regulations prevail over those of the Fund guidelines."); cf. Eaves v.

Penn, 587 F.2d 453, 459 (10th Cir. 1978) (rejecting argument that fiduciaries were

required under section 404(a)(1)(D) to follow plan documents with regard to

investments in the stock of the sponsoring company even where such investments

were disloyal or imprudent).

The Secretary's claims regulations likewise recognize ERISA's concern with

eliminating jurisdictional and other obstacles to the claims process.  The

regulations, promulgated pursuant to the statutory mandate in ERISA section 503

to provide for "full and fair review" of benefit claims, 29 U.S.C. § 1133, require

that benefit claim "procedures do not contain any provision, and are not administered in a way, that unduly inhibits or hampers the initiation or processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3). Although this provision was specifically aimed at a plan's claims processing procedures, rather than district court litigation, it underscores ERISA's policy against imposing unnecessary obstacles to pursuing benefit claims.

In this case, the plan's forum selection clause forbids the plaintiff from bringing his action anywhere outside of Cedar Rapids, Iowa, a forum with which Smith has no connection, even though ERISA broadly permits the plaintiff to bring suit elsewhere, including the Western District of Kentucky where he worked and resides. Because the plan provision prohibiting suit in the jurisdiction where the breach took place (in this case, the plaintiff's residence in Kentucky) is not "consistent with" a statutory provision that authorizes litigation in Kentucky, section 404(a)(1)(D) precludes enforcement of this plan provision.

In holding to the contrary, the district court relied on a district court decision which in turn relied on a decision from this Court enforcing arbitration agreements even in the context of ERISA benefit claims, and reasoned that there is no significant distinction between mandating an arbitration process in lieu of a judicial forum and mandating the venue of a judicial forum. January 28, 2013 Order, RE 14, Page ID # 183 (citing Williams, 2010 WL 5147257, at *4, which in turn relied

17

on <u>Simon v. Pfizer Inc.</u>, 398 F.3d at 772).[2]  There are important differences

however.  Courts enforce arbitration agreements with regard to federal statutory

claims not based on some general policy favoring forum selection clauses, but

because that is what the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, requires.

<u>Shearson/American Express, Inc. v. McMahon</u>, 482 U.S. 220, 238 (1987) (holding

that an arbitration clause was enforceable under the Arbitration Act with respect to

a claim under the Securities Exchange Act of 1934).  Moreover, arbitration would

not require a claimant to litigate in a distant forum.  These distinctions were

recently recognized by the district court in <u>Coleman</u>, which rejected the analogy

between forum selection clauses and arbitration clauses based on the recognition

that they serve distinctly different purposes:

> Once again, § 1132(e)(2) regulates "[w]here an action . . . is brought," so
> that a plan's forum selection clause of the type chosen by Supervalu forces
> an individual plaintiff to litigate well away from the venues designated in
> that section (with a substantial increase in expense and inconvenience),
> while by contrast arbitration provides an alternative decisionmaker without
> necessarily creating such hardships for the individual.

---

[2]  The claims regulation provides that in the group health and disability context,
any arbitration under a mandatory arbitration provision must be non-binding, that
is, it may not limit the claimant's ability to challenge the benefit determination in
court.  29 C.F.R. § 2560.503-1(c)(3).  <u>See also</u> Claims Procedure FAQs, D-6,
available at <u>www.dol.gov/EBSA/faqs_faq_claims_proc_reg.html</u>

2013 WL 365263 at *6-7. Because there is no arbitration agreement at issue here, the congressional policy favoring arbitration is simply not implicated, and the cases giving effect to that policy are distinguishable.[3]

Many of the district court cases upholding forum selection clauses in ERISA plans also have relied on freedom-of-contract principles that generally have little relevance in the ERISA context. See, e.g., Bernikow v. Xerox Corp. Long-Term Disability Income Plan, 2006 WL 2536590, at *1 (C.D. Cal. Aug. 29, 2006) (plaintiff participant and defendant plan "entered into a contract" when plaintiff became a participant); Rogal v. Skilstaf, Inc., 446 F. Supp. 2d 334, 338 (E.D. Pa. 2006) (finding no evidence of "overweening bargaining power" and finding "compelling evidence" that the parties to the action consented to the choice of forum). As noted above, supra, at 15-16, ERISA specifically provides that plan terms cannot trump statutory rights. Moreover, ERISA plans more typically are not the product of anything approaching equal bargaining power or bilateral

---

[3] This Circuit's decision in Wong v. PartyGaming Ltd., 589 F.3d 821 (6th Cir. 2009), is also not controlling. In Wong, the court held that the party opposing a forum selection clause bears the burden of showing that the clause should not be enforced, and considered three factors on enforceability: (1) whether the clause was obtained by fraud, duress, or other unconscionable means, (2) whether the designated forum would ineffectively or unfairly handle the lawsuit, and (3) whether the designated forum would be so seriously inconvenient that requiring the plaintiff to sue there would be unjust. Id. at 828; see also January 28, 2013 Order, RE 14, Page ID # 183 (applying Wong factors). Wong is not controlling because the underlying dispute in that case did not arise under ERISA. The Sixth Circuit therefore had no occasion to consider whether its three-factor test is consistent with ERISA.

negotiations.  As the <u>Coleman</u> court correctly noted, "ERISA plans are rarely the subject of arms'-length negotiation [citations omitted] . . . Instead employers most often unilaterally design the benefits packages that they offer their employees." 2013 WL 365263, at *5 (citations omitted).  In this case, the remarkably uneven bargaining power between the plan sponsor and its employee is highlighted by the fact that the forum selection clause was first added seven years after Smith had retired.  Despite the district court's focus on AEGON's right to amend the Plan, in point of fact, Smith never had the opportunity as an employee to consider the impact such a clause might have on his ability to enforce his rights to benefits, much less to consent to or negotiate such a provision.

For this reason, the Supreme Court's heavy reliance on freedom-of-contract principles to uphold forum selection clauses in other contexts is inapt in ERISA cases in general and in this case in particular.  <u>E.g.</u> <u>Bremen</u>, 407 U.S. at 11 (upholding a foreign forum selection clause because it "accords with ancient concepts of freedom of contract"); <u>cf.</u> <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 595 (1991) (noting that it "bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness").  In this case as in the general run of ERISA cases, the Plan's forum selection provision is not "freely bargained for," and "unaffected by . . . undue influence, or overweening bargaining power."  <u>Bremen</u>, 407 U.S. at 12; <u>see</u>

20

Coleman, 2013 WL 365263, *5 ("ERISA plans are rarely the subject of arms'-length negotiation"); Viti v. Guardian Life Ins. Co. of Am., 817 F. Supp. 2d 214, 228 (S.D.N.Y. 2011) (stating that "an ERISA benefits plan is not a negotiated contract between two competent business persons" and noting "[t]he significant difference between such a contract and an agreement whose terms are freely negotiated and agreed to by parties standing as equals"). Individual plan participants generally do not negotiate, or even sign, plan documents. Even where they do sign plan documents, as Smith apparently did in agreeing to the VERRP (which did not contain a forum selection provision), they generally lack anything like equal bargaining power with their employer. In some cases, they will not even be aware that a clause limiting their statutory venue rights exists. Certainly Smith could not have been aware of such a clause during his employment because there was no forum selection provision in the Plan at any time until seven years after Smith retired. "Without such reasonable communication," an ERISA forum selection clause "can hardly be said to represent the parties' shared legitimate expectations" and in the face of such unequal bargaining power and lack of notice, it is "manifestly unjust" to apply forum selection clauses to ERISA plan participants. Mezyk v. U.S. Bank Pension Plan, 2009 WL 3853878, *3-*4 (S.D. Ill. 2009).

21

All of this is not to say that courts should do an individual analysis to determine the fairness of giving effect to the agreement under the circumstances, as in <u>Carnival Cruise Lines</u>.  Rather, it is further support for the conclusion that Congress – which enacted a liberal venue provision consistent with its intent to protect plan participants and beneficiaries by removing jurisdictional and other barriers to suit, and which forbade parties from contractually overriding ERISA's protections – could not have intended that such forum selection clauses be given effect in the context of ERISA-governed employee benefits.[4]

Moreover, where courts conclude that fundamental fairness to the defendants warrants transfer to another forum, they may do so under 28 U.S.C. §1404, although in the vast run of ERISA cases, courts will properly be loath to do so.  <u>See</u>, <u>e.g.</u>, <u>In re Warrick</u>, 70 F.3d 736, 740-741 (2d Cir. 1995); <u>Shanehchian v. Macy's, Inc.</u>, 251 F.R.D. at 292 .[5]  Here, however, defendant did not argue for

---

[4] There is no legislative history specifically concerning forum selection clauses as far as we have been able to ascertain.  This is not surprising or significant, however, because at the time ERISA was enacted in 1974, <u>Bremen</u> had still not generally been extended beyond admiralty.   Thus, until the Supreme Court issued its decision in <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 518-21 (1974), the same year that ERISA was enacted, the longstanding rule disfavoring forum selection clauses as against public policy still generally prevailed in the employment context.

[5] 28 U.S.C. § 1404(a) permits a change of venue within the federal courts, providing that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) "is intended to place

transfer nor did the district court make the necessary findings to warrant transfer

under section 1404(a), but instead erroneously concluded that defendant was

entitled to dismissal based on the contractual forum selection provision.  Nor is it

at all likely that defendant could make the necessary showing considering that

Smith worked and still resides in Louisville and had no connection whatsoever

with Cedar Rapids, whereas AEGON – which is the third-largest insurance

company in the United States, and apparently has a substantial presence in

Louisville because, until very recently, it maintained a headquarters less than a

discretion in the district court to adjudicate motions for transfer according to 'an
individualized, case-by-case consideration of convenience and fairness.'" Stewart
Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack,
376 U.S. 612, 622 (1964), and determining that where a claim has been brought in
an appropriate statutory forum, the enforceability of a forum selection clause is
considered under the section 1404(a) requirements for transfer, not dismissal).
Chief among the relevant considerations is the plaintiff's choice of venue,
particularly in ERISA cases.  "Unless the balance is strongly in favor of the movant
the plaintiff's choice of forum should rarely be disturbed." Scheidt v. Klein, 956
F.2d 963, 965 (10th Cir. 1992). See also Piper Aircraft Co. v. Reyno, 454 U.S.
235, 262 (1981).  Nevertheless, in cases, including those brought under ERISA,
where the plaintiff's choice of forum is so inconvenient or unjust that public and
private factors strongly favor litigating in another valid forum, courts retain their
ability under section 1404(a) to transfer the case. See Cargill Inc. v. Prudential Ins.
Co. of America, 920 F. Supp. 144, 147-48 (D. Colo. 1996) (granting defendants'
motion to transfer ERISA claim to Minnesota after noting such facts as the total
lack of factual connection to Colorado; that only 110 of plaintiff's 2750 Colorado
employees participate in the plan; claims administration at issue in suit took place
exclusively in Minnesota and North Carolina, and documents related to the case
are there; and that none of the 24 witnesses identified by the parties reside in
Colorado, while 10 reside in Minnesota). Cf. Wong, 589 F.3d at 830-34 (affirming
district court's dismissal of suit filed in district court in Ohio under doctrine of
*forum non convenience* in non-ERISA case involving online gaming company
based in foreign jurisdiction).

mile from the federal courthouse – surely is not inconvenienced by having to litigate a benefit claim there.  Smith, on the other hand, would likely be greatly inconvenienced by having to litigate in Iowa, as would many if not most of AEGON's employees in states other than Iowa, all of whom are purportedly covered by this same forum selection provision.

Although no circuit, including the Sixth, has yet decided the issue, the Eleventh Circuit's decision in <u>Gulf Life Ins. Co. v. Arnold</u>, 809 F.2d at 1524 , is instructive.  In that case, an ERISA plan participant filed a claim for benefits under the terms of his plan.  Rather than administratively determine his claim, Gulf Life filed a declaratory judgment action in Florida federal court, invoking ERISA section 502(e)(2), even though neither the participant nor his claim had any connection with or presence in the state of Florida.  The Eleventh Circuit affirmed the district court's dismissal, noting that ERISA was drafted to provide remedies to participants and beneficiaries, including "ready access to federal courts." <u>Id.</u>.  The court reasoned that it would be contrary to this statutory purpose if ERISA's broad venue provisions, "the sword that Congress intended participants/beneficiaries to wield in asserting their rights," "could instead be turned against those whom it was designed to aid." <u>Id.</u> at 1525.

The Supreme Court's decision in <u>Boyd v. Grand Trunk Western R. Co.</u>, 338 U.S. 263 (1949) is even more instructive.  In <u>Boyd</u>, a railroad company made two

payments of $50 to an injured employee in exchange for an agreement that, if the parties could not settle their dispute, the injured worker would bring suit in Michigan. Ultimately – after the worker brought suit in Illinois, where he was permitted to do so under the venue provision of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 56 – the case made its way to the Supreme Court, which held that the contractual forum selection clause was not enforceable. The Court relied not only on FELA's venue provision, but also on a provision in FELA that voids "any contract, rule, regulation, or device whatsoever, the purpose of which shall be to enable any common carrier to exempt itself from any liability created by this Act." 45 U.S.C. § 55. Because the Court saw the "right to select the forum granted" by FELA to be a "substantial right," it concluded that "[i]t would thwart the express purpose of [FELA] to sanction defeat of that right by the device at bar." 338 U.S. at 266. Just as Boyd is an example of a forum selection clause that is unenforceable because it contravenes the strong public policy expressed in FELA, see Bremen, 407 U.S. at 15 (distinguishing Boyd on that basis), so too is the forum selection clause in this case given the broad venue right granted in ERISA section 502(e)(2), and ERISA's express prohibition on plan provisions that conflict with statutory rights.

Thus, when ERISA defendants have sought a change of venue, the courts have "uniformly" interpreted ERISA to favor a "broad choice of venue for all

25

ERISA plaintiffs," so that "the plaintiff's choice of venue . . . must be afforded a heightened level of deference, beyond the usual deference afforded plaintiffs under § 1404(a) analysis." Shanehchian, 251 F.R.D. at 292 (citations omitted); Warrick, 70 F.3d at 740-41 (ERISA plaintiffs' choice of venue is "entitled to substantial consideration"); Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron, 67 F. Supp. 2d 1250, 1257 (D. Kan. 1999) ("Disturbing plaintiffs' chosen venue should be more difficult in an ERISA case."); Briesch v. Auto. Club of S. California, 40 F. Supp. 2d 1318, 1322 (D. Utah 1999) ("Congressional policy favors plaintiff's choice of forum in ERISA actions" (citations omitted)). See also Holland v. ACL Transp. Services, LLC, 815 F. Supp. 2d 46, 56 (D.D.C. 2011) (courts afford "special weight" to an ERISA "plaintiff's choice of forum" when assessing a motion to transfer (internal quotations and citations omitted)); Fanning v. Capco Contractors, Inc., 711 F. Supp. 2d 65, 69 (D.D.C. 2010) ("Courts give special weight to a plaintiff's choice of forum in ERISA cases.") (citations omitted); Bd. Of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Sullivant Avenue Properties, LLC, 508 F. Supp. 2d 473, 477 & n.2 (E.D. Va. 2007) (noting that because "Congress recognized as a special goal of ERISA …to provide the full range of legal and equitable remedies'. . .  Plaintiff's venue selection under ERISA is entitled to greater deference than typically afforded to Plaintiff's choice of venue.") (quoting H.R. Rep. No. 533, (1973) reprinted in 1974 U.S.C.C.A.N. 4639, 4655)

(other citations omitted)); <u>DeFazio v. Hollister Employee Share Ownership Trust</u>, 406 F. Supp. 2d 1085, 1089 (E.D. Cal. 2005).

      <u>Williams v. CIGNA</u>, one of the cases relied on by the district court, cited a number of district court decisions that have upheld forum selection clauses in ERISA plans. <u>E.g.</u>, <u>Rodriguez v. PepsiCo Long Term Disability Plan</u>, 716 F. Supp. 2d 855, 857-62 (N.D. Cal. 2010); <u>Sneed v. Wellmark Blue Cross & Blue Shield</u>, 2008 WL 1929985, at *3 (E.D. Tenn. April 30, 2008); and <u>Rogal</u>, 446 F. Supp. 2d at 339. For the reasons discussed above, however, these cases are wrongly decided. This Court should decline to enforce such clauses in light of ERISA's jurisdiction and venue provisions, its provision trumping contrary plan terms, and "strong public policy" supporting participants' ready access to federal court so as to protect their benefits, a policy that ERISA has "declared by statute," <u>Bremen</u>, 407 U.S. at 15. That policy would be significantly undermined if plan participants and their beneficiaries are precluded from pursuing their benefit claims by contractual forum selection provisions that may require them to bring suit hundreds or even thousands of miles away from where they reside.

## CONCLUSION

For the foregoing reasons, the Secretary requests that the Court reverse the decision of the district court.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor of Labor

ELIZABETH HOPKINS
Counsel for Appellate and Special
    Litigation

s/Stacey E. Elias
STACEY E. ELIAS
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693 5611
Fax: (202) 693 5610
elias.stacey@dol.gov

28

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify that the foregoing brief complies with the type-volume

limitations provided in Fed. R. App. P. 32(a), because:

(1) The brief contains 6,698 words, inclusive of footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

(2) The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

Dated: August 12, 2013                     s/Stacey E. Elias
                                           Trial Attorney
                                           United States Department of Labor
                                           Attorney for Amicus Curiae
                                             Secretary of Labor

A1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2013, copies of the Brief were served upon the parties by operation of the Sixth Circuit's CM/ECF system.  All parties to this appeal are registered with the Sixth Circuit's CM/ECF system and no parties to this appeal appear pro se.

<u>/s/ Stacey Elias</u>
Stacey Elias
Trial Attorney
Plan Benefits Security Division
U.S. Department of Labor
Room N-4611
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5623 – Phone
(202) 693-5610 – Fax
elias.stacey@dol.gov

Attorney for Amicus Curiae

A2