NO. 13-5492

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ROGER SMITH

*Plaintiff-Appellant*

v.

AEGON COMPANIES PENSION PLAN

*Defendant-Appellee*

**On Appeal from the United States District Court for
the Western District of Kentucky, Louisville Division**
*Case No. 3:13-cv-697
Hon. Judge John G. Heyburn II*

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Michael D. Grabhorn
*mdg@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Pkwy, Ste. 107
Louisville, KY 40223
p: (502) 244-9331
f: (502) 244-9334

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

SUMMARY ...........................................................................................1

DISCUSSION .........................................................................................7

    A.    Title I of ERISA provides for "ready access" to federal courts. .............7

    B.    Aegon is required to abide by ERISA where the terms of the Plan Conflict with ERISA. ..................................................................8

    C.    Forum is not the same as Venue. ...........................................9

    D.    The venue provision was not the product of any negotiation................10

    E.    Mr. Smith had an agreement to litigate in Kentucky.............................11

CONCLUSION ......................................................................................12

CERTIFICATE OF COMPLIANCE.................................................... A-1

CERTIFICATE OF SERVICE ............................................................ A-2

# TABLE OF AUTHORITIES

### Cases

*Carnival Cruise Lines v. Shute* ...............................................................................10
  499 U.S. 585 (1991)

*Coulter v. Office and Professional Employees Intern. Union* ...................................5
  2003 WL 21938910 (E.D.Tenn., June 10 2003)

*International Shoe Co. v. Washington* ......................................................................5
  326 U.S. 310 (1945)

*Moore v. Rohm & Haas Co.*
  446 F.3d 643 (6th Cir.2006) ...................................................................................6

*Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*
  547 F.3d 531 (6th Cir.2008) ..................................................................................11

*Russell v. Citi,*
  2013 WL 3489465 (E.D.Ky., Jul. 10, 2013) ........................................................10

*Smith v. Commonwealth General Corporation,*
  Case No. 12-6284 ...........................................................................................6, 8, 11

*Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.*
  607 F.2d 245 (9th Cir.1979) ...............................................................................5, 6

*Winnett v. Caterpillar Inc.,*
  2006 WL 1722434 (M.D.Tenn., June 20, 2006) ................................................... 5

### Rules

Fed.R.App. 201(d) ....................................................................................................6

### Statutes

29 U.S.C. §1001(a) ...................................................................................................7

29 U.S.C. §1001(b) ..................................................................................................2,7

29 U.S.C. §1104(a)(1)(A) .........................................................................................3

29 U.S.C. §1132(e)(1) ...............................................................................................3

29 U.S.C. §1132(e)(2) ...............................................................................................4

### Publications

H.R.Rep. No. 93-533 (1973) .....................................................................................3

iii

## SUMMARY

This case concerns Aegon's belated efforts to turn back the clock and significantly reduce Mr. Smith's monthly retirement income eleven (11) years after he retired and commenced his promised monthly retirement benefits.

Aegon has not offered any defense for its decade long delay in taking any action. Aegon has not pointed to any plan language permitting it to claw back an alleged overpayment let alone after an eleven (11) year gap – especially where Mr. Smith relied on the monthly retirement income for his financial needs. Aegon has declined to identify any plan language that permits it to cut (reduce) Mr. Smith's monthly retirement income to zero ($0) for the foreseeable future to recover the alleged overpayment. Aegon has similarly neglected to identify any language permitting it to cut Mr. Smith's monthly retirement income (as well as his wife's survivor benefits) in half.

Aegon avoids any discussion of the monthly income promised to Mr. Smith by way of his contractual severance agreement – promising him a monthly retirement income of $2,189.51. Aegon does not explain why it elected to pay the entire $2,189.51 from the pension plan – as opposed to $1,066.54 from the pension plan and $1,122.97 from the non-qualified excess benefit plan. Aegon remains silent. However, Aegon cannot deny Mr. Smith is entitled to receive the $2,189.51 – regardless of whether it should have been paid from the pension plan as it did for

over a decade.[1]

Instead of addressing the merits of its actions, Aegon seeks to avoid accountability by relying on procedural gimmicks created by its unilateral plan amendment – an amendment made seven (7) years after Mr. Smith ceased employment with Aegon and retired, in accordance with the terms of his severance agreement. Mr. Smith maintains that Aegon's belated plan amendment (attempting to limit venue to a single federal court in Iowa) is contrary to ERISA and unenforceable. The U.S. Department of Labor, the agency entrusted by Congress with administrative enforcement of ERISA's express goal of proving participants and beneficiaries with "ready access to the Federal courts,"[2] agrees with Mr. Smith.

As discussed in both Mr. Smith's principle brief, and in the Department of Labor amicus brief filed in support of his position, ERISA's statutory and policy[3]

---

[1] Mr. Smith is indifferent as to where and who should have paid the $2,189.51 per month. Whether Aegon chose to do so from two sources (i.e. Commonwealth General Corporation and the pension plan) or from one (as it did) is not relevant to Mr. Smith's entitlement to receive the agreed $2,189.51. Any funding issues are internal to Aegon.

[2] 29 U.S.C. §1001(b) ("It is hereby declared to be the policy of this chapter to protect ... the interests of participants ... and their beneficiaries, by providing ... ready access to Federal courts.").

[3] "The enforcement provisions have been designed specifically to provide both the Secretary and *participants and beneficiaries* with broad remedies for redressing or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and *to remove jurisdictional and procedural obstacles* which in the

"exclusive purpose" is providing benefits for participants and beneficiaries.[4]  These objectives necessarily require an ERISA plan not to be crafted in such a way as to interfere with this "exclusive purpose."  A plan amendment, especially one added to the plan seven (7) years after a participant commenced benefits, purporting to limit a participant's "ready access to Federal courts" runs afoul of these goals and objectives.

Here Aegon venue limitation benefits its own interests, not those of the plan participants and beneficiaries, including Mr. Smith.  Aegon has grafted a forum selection clause into its plan document purporting to limit venue to the Federal District Court in Cedar Rapids, Iowa.  Aegon's attempt to limit Mr. Smith's rights as a pension plan retiree (again seven (7) years after he retired and ceased to be an active participant) runs afoul of ERISA's statutory and policy objectives.

Contrary to Aegon's arguments, ERISA contains express language addressing both the forum and the venue.[5]  Whether it expressly recognized this

---

past appear to have hampered effective enforcement of fiduciary responsibilities under state law for the recovery of benefits due to participants." H.R.Rep. No. 93-533, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655 (emphasis added).

[4]  29 U.S.C. §1104(a)(1)(A).

[5]  ERISA also dictates the forum in which a participant or beneficiary may bring a claim.  *See*, 29 U.S.C. §1132(e)(1) (with respect to benefit claims "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B).").  Aegon's amendment also runs afoul of ERISA by attempting to limit a participant's benefits claim to federal court.  ERISA provides for concurrent jurisdiction in state court as well.

possibility or not, Congress provided specific statutory safeguards ensuring a participant's "ready access to Federal courts."   Congress provided a broad venue provision.

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. §1132(e)(2).

Based on this Congressional mandate, Mr. Smith properly brought his benefits claim in the Federal Court for the Western District of Kentucky, Louisville Division.  He accumulated all of his plan benefits while employed in Louisville, Kentucky.  He accepted a severance contract that provided additional retirement benefits in exchange for his continued employment in Louisville, Kentucky.  As part of the severance contract, Mr. Smith agreed to the "exclusive jurisdiction of courts (federal and state) located in [Louisville,] Kentucky."  In accordance with his severance contract, he retired and commenced plan benefits while employed in Louisville, Kentucky.  He received his monthly plan benefits for the next eleven (11) plus years while residing in Louisville, Kentucky.

When Aegon arbitrarily and belatedly decided to reduce and cut-off his

---

However, for purposes of this appeal, the focus is on Aegon's attempted limitation of Mr. Smith's venue rights.

monthly plan benefits, Mr. Smith sought legal relief in accordance with ERISA.[6]

He filed suit where he had "ready access." He filed suit in the Federal Court for

the Western District of Kentucky, Louisville Division.

Mr. Smith's decision to file in Louisville is supported by ERISA's broad

public policy and entitled to significant deference. Deference not afforded by

Aegon, or the District Court.

> In light of the intent expressed in the congressional
> record, as interpreted uniformly in the federal courts, in
> favor of *broad choice of venue for all ERISA plaintiffs*,
> the plaintiff's choice of venue in this case must be
> afforded a *heightened level of deference*, beyond the
> usual deference afforded plaintiffs under § 1404(a)
> analysis.

*Winnett v. Caterpillar Inc.*, 2006 WL 1722434 at * 5 (M.D.Tenn., June 20, 2006)

(emphasis added). Further, Mr. Smith's decision is in accordance with ERISA's

statutory venue provision. Not only did the breach occur in Louisville, Kentucky,

but also Aegon can be found in Louisville, Kentucky. *See*, *Coulter v. Office and

Professional Employees Intern. Union*, 2003 WL 21938910 at *3 (E.D.Tenn., June

10 2003) (string citing numerous cases finding a breach occurs "in the place where

the plaintiff receives his or her benefits."); *See also, Varsic v. U.S. Dist. Ct. for

Cent. Dist. of Cal.*, 607 F.2d 245, 250 (9th Cir.1979) (analyzing personal

---

[6]   In addition to ERISA, Mr. Smith also filed his lawsuit in accordance with the
severance contract in which he specifically agreed to limit jurisdiction and venue
to Kentucky courts. Whereas Aegon cannot deny the 2007 venue amendment was
not negotiated in advance to Mr. Smith, the severance agreement was the result of
an arms-length negotiation.

5

jurisdiction over an ERISA defendant under the minimum contacts test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and concluding that personal jurisdiction over an employee benefit fund is proper in a district where covered employees perform their work and earn their pension credits.); *Moore v. Rohm & Haas Co.,* 446 F.3d 643, 646 (6th Cir.2006) (citing with approval, *Varsic*, 607 F.2d 245).

Contrary to the foregoing statutory, policy, and legislative support, Aegon insists the venue provision, which it grafted onto the plan seven (7) years after Mr. Smith's retirement, is enforceable.  As detailed in his principle brief and in the amicus brief, as well as further discussed herein, Mr. Smith submits Aegon's venue provision is unenforceable as to his (a)(1)(B) benefits claim and as to his (a)(3) claim for equitable relief.  Therefore, Mr. Smith requests the Court reverse the District Court's decision and find venue proper in the Western District of Kentucky, Louisville Division.[7]

---

[7]   Mr. Smith will also be citing to the district court record in *Smith v. Commonwealth General Corporation*, Case No. 12-6284 (*Smith I*).  Under Federal Rule of Evidence 201(b), this Court may take judicial notice of the docket and filings in *Smith I*; *see also* Fed. R. Evid. 201(d) (judicial notice may be taken "at any stage of the proceeding.").

## DISCUSSION

Whereas Mr. Smith's position was laid out in his principal brief, as supported by the Department of Labor amicus brief, Aegon's brief requires a brief rebuttal.

### A.    Title I of ERISA provides for "ready access" to federal courts.

The Congressional policy behind ERISA cannot be ignored.  In Title I of ERISA, Congress made the following relevant statements of public policy:

> The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans... that it is therefore desirable in the interests of employees and their beneficiaries... that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. §1001(a).

> It is hereby declared to be the policy of this chapter to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. §1001(b).

Despite this express declaration in Title I, Aegon argues the Court should disregard Congress' mandate because "ready access to Federal courts is not included in Title I."  Aegon Brief, p.25.  This argument cannot be reconciled with ERISA.  There is simply no support for this argument.  Title I of ERISA begins

7

with and includes 29 U.S.C. §1001, including Congress' applicable statement of public policy.

**B.    Aegon is required to abide by ERISA where the terms of the Plan Conflict with ERISA.**

Aegon argues that the venue provision must be enforced because "ERISA § 404(a)(1)(D) ... requires a fiduciary to comply with a plan document to the extent the plan document is consistent with ERISA."  Aegon Brief, p.25.  Aegon goes on to argue "the terms of the 'documents and instruments governing the plan' control."  *Id*. at p.33.  While Aegon is correct that the terms of an ERISA plan control, there is a significant exception.  Where the terms of the plan are contrary to, or otherwise conflict with ERISA, the terms are unenforceable.  The Aegon plan document confirms that, where the plan conflicts with ERISA, ERISA is controlling.

First, the Aegon plan contains a "governing law" section acknowledging that ERISA is controlling.  *Smith I*, Dkt. 1-2, Plan Document, p.83, PageID #111 ("The Plan will be governed by and construed according to the federal laws governing employee benefit plans qualified under the Code and ERISA...").  Second, the Aegon plan document contains a "severability" clause, acknowledging a plan term may be deemed invalid and excludes the offending term from the plan.  *Id.* at p.82, PageID #110 ("In case any provision of this Plan is held illegal or invalid for any reason, the illegality or invalidity will not affect the remaining parts of the Plan.

8

The Plan will be construed and enforced as if the illegal and invalid provisions had never been included.").

In this instance, the venue limitation conflicts with ERISA's broad venue provision. No matter how Aegon tries to couch it, the issue remains the same. Aegon's venue clause significantly limits Mr. Smith's, as well as all other participants, access to the federal courts. Aegon has offered no explanation as to how this provision is in the exclusive interest of its plan participants and beneficiaries. The lack of an explanation is likely because the venue limitation does not benefit either participants or beneficiaries. Instead, the limitation is for Aegon's sole benefit. Given ERISA's mandate, the venue limitation conflicts with ERISA and must be stricken from the plan.

### C.    Forum is not the same as Venue.

In an effort to find support for the Court enforcing its venue limitation, Aegon cites to a number of cases concerning forum selection clauses. However, this case is not about the forum (i.e. federal court, state court, or arbitrator) in which Mr. Smith's ERISA claims can be heard. It is not about *who* can hear his claim. It is instead about *where* his claims may be filed. It's about venue.

The litany of case law relied on by Aegon is interesting at best, but not dispositive. Throughout its brief, Aegon relies heavily on cases where the courts enforced forum selection clauses requiring a claim be arbitrated as opposed to litigated in federal court. The cited case law included ERISA claims. However, in

9

each of the cases, the issue was solely the forum, not venue. The key distinction between the forum case law and the venue limitation is that that while a claim might be subject to arbitration (forum), there is no requirement that the claimant (participant) travel across the country for the arbitration (venue). Hence, Aegon's arguments to the contrary, by permitting ERISA claims to proceed in an arbitration forum, this have not affected an ERISA participant's "ready access." It has not affected venue. The action would still proceed in the participant's locale.

### D.    The venue provision was not the product of any negotiation.

Aegon argues at length about the contractual nature of its venue limitation. It simply relies on several cases involving contractual arbitration clauses and the courts' subsequent enforcement of the clauses. *See, e.g*., Aegon Brief, p.11 (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)). However, in each of the cases relied on by Aegon, the forum selection clause was already in the contract at the time the claimant (participant) accepted its terms. Aegon has not cited a single case in which a court enforced a forum selection clause (i.e. arbitration) that was added to the contract unilaterally and after the contract was accepted.

As recently as July, this issue was addressed by the Eastern District of Kentucky. In *Russell v. Citi*, 2013 WL 3489465 (E.D.Ky., Jul. 10, 2013), Judge Bunning considered the applicability of an arbitration clause to plaintiff's claims. At issue was whether a subsequent arbitration agreement, agreed to by both parties to the contract, was applicable to prior employment related claims. Citing to the

10

overriding principal that "the legal predicate of compulsory arbitration is contractual consent," the court held the subsequent arbitration clause inapplicable to prior claims. *Id*. at *3. The court held the arbitration clause only applied to claims accruing subsequent to its effective date. Prior claims were subject to the parties' prior agreements. *Id*. at *6 ("Since this action arose before Plaintiff signed the Arbitration Policy, the Court finds that it does not fall within the Policy.").

A similar analysis applies to the Aegon venue limitation. First, the venue limitation is unenforceable since it was not the product of any discussion or negotiation with Mr. Smith. Aegon concedes the venue limitation was unilateral. Second, even assuming the venue limitation were enforceable, it can only apply to prospective claims – not to claims arising prior to its adoption. Here, despite Aegon's assertions to the contrary, the amount of Mr. Smith's monthly income benefit was established in 2000, seven (7) years prior to the addition of the venue limitation. Any claim Mr. Smith <u>or</u> Aegon had concerning the accuracy of the pension benefit began to accrue at that time, in 2000. *See*, *Redmon v. Sud-Chemie Inc. Retirement Plan for Union Employees*, 547 F.3d 531, 538-539 (6th Cir.2008). Based on this accrual date, the terms of the 2000 plan would apply. Notably, the 2000 plan did not contain any venue limitation.

### E.    Mr. Smith had an agreement to litigate in Kentucky.

Aegon states that Mr. Smith and the plan did not have "an agreement to litigate in Kentucky." Aegon Brief, p.37. This statement is incorrect. Mr. Smith's

11

severance agreement expressly provided "exclusive jurisdiction of courts (federal and state) located in [Louisville,] Kentucky." *See*, *Smith I*, Dkt. 15-1, p.43, Page ID #322. This fact was confirmed in his complaint in this action. Dkt. 1, p.5, PageID #1 ("Venue lies in the United States District Court for the Western District of Kentucky pursuant to ... the agreement of the parties."). Aegon cannot deny the language of the severance contract and its continuing viability.

## CONCLUSION

The Court should reverse the District Court's decision and find Aegon's venue limitation, grafted onto the Plan some seven years after Mr. Smith retired and commenced benefits, is unenforceable. Further, the Court should reverse the District Court's dismissal of Mr. Smith's (a)(3) claims for other equitable relief and find Aegon's unilateral Plan amendment inapplicable.

---

Dated:  October 17, 2013           Respectfully submitted,

s/ Michael D. Grabhorn
Michael D. Grabhorn
*mdg@grabhornlaw.com*
Grabhorn Law Office, PLLC
2525 Nelson Miller Parkway, Ste. 107
Louisville, Kentucky 40223
p: (502) 244-9331
f: (502) 244-9334

***Counsel for Plaintiff-Appellant***

12

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed.R.App.P. 32(a)(7)(B).  The foregoing brief contains 3,389 words of Times New Roman (14 point) proportional type.  The word processing software used to prepare this brief was Microsoft Word 2010 and Adobe Acrobat 9 Pro.

Dated: October 17, 2013          s/ Michael D. Grabhorn
                                 Michael D. Grabhorn

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2013 a copy of the foregoing was electronically filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  Parties not registered with the Court's electronic filing system were served this same day by First Class U.S. Mail.

s/ Michael D. Grabhorn
Michael D. Grabhorn